## Wytheville

FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE
v. PEOPLE'S NATIONAL BANK OF ROCKY
MOUNT, VIRGINIA.

June 14, 1923.

1. BILLS, NOTES AND CHECKS—*Draft—Misnomer of Payee—Case at Bar.*—
   In the instant case a draft, with bill of lading attached, was drawn,
   by inadvertence, on a printed form in favor of a bank which had been
   consolidated with another, the consolidated bank taking a different
   name. It was from the consolidated bank that the drawer received
   cash credit for the amount of the draft, and to whom the draft as
   well as the bill of lading was delivered. It was clear that the failure
   to make the draft payable to the consolidated bank was a mere
   inadvertent clerical error, because the bank to which it was made
   payable had been out of existence for nearly twelve months.
   *Held:* That a draft discounted under these circumstances and credited
   as cash to the drawer, in good faith and without notice, vested the
   discounting bank with title and all of the rights of an innocent holder
   thereof for value.

2. BILLS, NOTES AND CHECKS—*Draft—Misnomer of Payee—Case at Bar.*—
   In the instant case where by a clerical error a draft was drawn in
   favor of one of the constituents of a consolidated bank, the consoli-
   dated bank would have the right under section 5605 of the Code of
   1919 to endorse the instrument as therein described, adding, if it
   thought fit, its proper signature. In the instant case, however,
   under the evidence and understanding of the parties, it would not
   have been necessary to endorse the instrument in the name of the
   payee so wrongly designated, for the consolidated bank clearly had
   the right to insert its own name as payee.

3. BILLS, NOTES AND CHECKS—*Draft—Misnomer of Payee—Case at Bar.*—
   In the instant case a draft, with bill of lading attached, was drawn,
   by inadvertence, on a printed form in favor of a bank which had been
   consolidated with another, the consolidated bank taking a different
   name. It was from the consolidated bank that the drawer received
   cash credit for the amount of the draft, and to whom the draft as
   well as the bill of lading was delivered. It was clear that the failure
   to make the draft payable to the consolidated bank was a mere

inadvertent clerical error, because the bank to which it was made payable had been out of existence for nearly twelve months.

*Held:* That, under the circumstances, the draft might well be construed, under section 5571 of the Code of 1919, to be payable to bearer, and if thus payable to bearer no endorsement was necessary.

4. BILLS, NOTES AND CHECKS—*Draft—Misnomer of Payee—Case at Bar.*— Where a draft by inadvertence was made payable to one of the constituent corporations of a consolidated bank, if the nominal payee of the draft still existed as a corporation for any purpose, as under the consolidation agreement, all the property rights of the constituent corporation became vested in the consolidated bank, the consolidated bank was the legal holder of the draft.

5. BILLS, NOTES AND CHECKS—*Draft Accompanied by Bill of Lading—Deposit as Cash—Title of Bank.*—Where a draft, with bill of lading attached, is discounted by a bank and credited as cash to the drawer subject to check, in good faith and without notice, the discounting bank is vested with title to the draft and all of the rights of an innocent holder thereof for value.

6. BILLS, NOTES AND CHECKS—*Draft with Bill of Lading Attached—Duty of Bank as Agent for Collection—Case at Bar.*—A grain company drew on a milling company for the price of a carload of grain and attached the bill of lading of the car to the draft and discounted the draft at plaintiff bank, who forwarded the draft with bill of lading to defendant bank for collection.

*Held:* That defendant bank was the agent of plaintiff bank, and under a high duty to protect and respect its rights as the holder of the draft in due course.

7. BILLS, NOTES AND CHECKS—*Draft with Bill of Lading Attached—Duty of Bank as Agent for Collection—Duty to Remit Proceeds—Attachment of Fund—Case at Bar.*—A grain company drew on a milling company for the price of a carload of grain and attached the bill of lading of the car to the draft and discounted the draft at plaintiff bank, who forwarded the draft with bill of lading to defendant bank for collection, accompanied by a letter asking that the draft be protested if not paid on presentment.

*Held:* That failure of defendant bank to remit the proceeds of the draft from July 2nd, when collected, to July 8th, when the funds were attached, was negligence, and that failure to notify plaintiff bank of the attachment until July 15th was gross negligence.

8. BILLS, NOTES AND CHECKS—*Draft—Duty of Bank as Agent for Collection—Attachment of Fund—Case at Bar.*—In the instant case plaintiff bank forwarded to defendant bank a draft for collection.  Defendant bank collected the draft but the proceeds were afterwards attached. Plaintiff bank wrote defendant requesting it to place the matter in the hands of reliable attorneys.  Notwithstanding this request de-

fendant bank filed its answer in the attachment proceedings without. even suggesting plaintiff bank's claim to the funds.

*Held:* That the request of plaintiff bank was natural, in accordance with custom, and should have been complied with by defendant, and it was also the duty of defendant, not only to its principal, the plaintiff, but also to the court, to make a frank statement of the essential and pertinent facts, which were absolutely necessary in order to enable the court to determine the true ownership of the fund attached.

9. Bills, Notes and Checks—*Draft—Duty of Bank as Agent for Collection—Attachment of Fund—Case at Bar.*—In the instant case plaintiff was the innocent *bona fide* holder of a draft and defendant was its agent for the collection of the draft. Defendant was bound to account for its proceeds unless lawfully excused, and where the proceeds were attached defendant was bound to respond to the reasonable requests of its principal, such as the employment of counsel to protect its interest. Prompt and proper response to these requests would have enabled plaintiff bank to intervene in the attachment proceedings and establish its legal right to the fund involved.

*Held:* That defendant having signally failed in the discharge of its duties in this respect, plaintiff was entitled to recover the amount of the draft from defendant.

10. Agency—*Duty of Agent—Good Faith.*—Above all it is required of an agent that he be faithful to his principal.

11. Bills, Notes and Checks—*Banks and Banking—Duty of Bank as Agent for Collection.*—It is the duty of a bank receiving a draft for collection to remit the proceeds of the draft promptly. If the proceeds are attached it is the duty of the collecting bank to promptly notify its principal, and when it answers the attachment, to disclose its agency to the court and the claim of its principal upon the fund. If its principal asks it to employ an attorney to present its claim, its request should be complied with.

Error to a judgment of the Circuit Court of Franklin county, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Miller, Mack & Fairchild* and *Woods, Chitwood, Coxe & Rodgers,* for the plaintiff in error.

*John P. Lee* and *H. D. Dillard*, for the defendant in error.

Prentis, J., delivered the opinion of the court.

The plaintiff in error sued the defendant in error to recover the proceeds of a draft, with bill of lading attached, which had been collected by the defendant bank, as agent of the plaintiff bank. A jury being waived, the case was submitted to the judge of the trial court, and there was a judgment for the defendant.

The controlling facts, as we construe them, are these: The Rocky Mount Grocery and Milling Company, of Rocky Mount, Virginia, hereafter called the milling company, on October 30, 1919, entered into a contract for the purchase of twelve carloads of corn with the Franke Grain Company, of Milwaukee, which was succeeded by the Franke-LaBudde Grain Company, hereafter referred to as the grain company. Pursuant thereto the grain company, having previously shipped ten cars, shipped a carload of corn to the milling company at Rocky Mount, May 28, 1920. Simultaneously with this shipment, the grain company drew on the milling company for $1,670.00, payable on demand. To the draft was attached the bill of lading for the car of corn, which was consigned by the grain company to its own order at Rocky Mount, Va. This draft was discounted by the plaintiff bank for the grain company, and on the same day was mailed by the plaintiff to the defendant, with instructions to deliver the attached bill of lading to the milling company upon payment of the draft, and to remit the proceeds thereof to the Fourth Street Bank of Philadelphia for the credit of the plaintiff bank. On June 14th and June 30th tracer

inquiries were sent by mail to the defendant, but no acknowledgment thereof was made. The car of corn reached its destination, and the draft was paid by the milling company to the defendant July 2, 1920. The defendant having failed to remit the proceeds of the draft to the plaintiff, the milling company, July 8, 1920, sued out an attachment in the Circuit Court of Franklin county against the grain company and had it levied upon the fund thus held by the defendant, alleging that the corn was worthless. In that proceeding an order was entered sustaining the attachment September 6, 1920, and the defendant paid the amount $1,670.00 to the milling company. In the meantime, however, the plaintiff, on July 15, 1920, inquired by wire of the defendant whether or not the draft which had been sent May 28th had been protested. To this telegram the defendant wired that the amount was held by order of the circuit court, and wrote a letter confirming the telegram on the same date, in which it is said: "The bill of lading on this draft was delivered to the Rocky Mount Grocery and Milling Company on the 7th of July. We were immediately advised that the goods in the car were in a very bad condition and the court served notice on us that the amount should be held." Thereafter, the plaintiff wrote the defendant, July 22, 1920, requesting additional information, but received no response. Then August 31, 1920, the plaintiff bank wrote the defendant this letter: "Referring to our collection * * demand draft drawn on the Rocky Mount Grocery and Milling Company, for $1,670.00, sent to you in our letter of May 28, this draft was paid on July 7, as advised in your letter of July 15, and the funds immediately held by order of the court. We, therefore, wish to notify you that the funds in question are our property, as we purchased the draft with bill of

lading attached, from the Franke-LaBudde Grain Company, Milwaukee. Kindly place this matter in the hands of reliable attorneys in your city to protect our interests." This letter was also ignored, and on September 6th following, the defendant filed an answer in the attachment proceedings, in which no allusion whatever was made to its agency or to the fact that the fund was claimed by the plaintiff bank. There could be but one impression derived by the court from this answer in that case, and this was that the fund attached unquestionably belonged to the grain company. The plaintiff bank again wrote the defendant September 13, 1920, to which the defendant replied September 22, 1920, saying: "Referring to collection Rocky Mount Grocery and Milling Company, $1,670.00, sent us on May 28th, which was held by order of the court, beg to advise that the court has ordered us to pay the amount to the Rocky Mount Grocery and Milling Company, Inc., by order issued September 6th. So far as we are concerned this closes the matter." Thereupon, the plaintiff wrote the defendant requesting the name of an attorney who could reopen the case, and in response to this request the defendant recommended a local attorney. After some correspondence, this attorney declined to proceed, and the plaintiff immediately employed the attorneys who instituted this proceeding.

The notice alleges that the plaintiff purchased and discounted the draft from the drawer in good faith, without notice, for valuable consideration, and thereby became the holder thereof in due course and entitled upon payment to the proceeds thereof.

The circumstance most relied upon by the defendant grows out of these facts: The draft was drawn on a printed form in favor of the First National Bank of Milwaukee, that name being printed in this blank. There

had been a bank of this name doing business in Milwaukee, but retaining its own charter it had consolidated with the First Wisconsin National Bank, the consolidated corporation taking the name First Wisconsin National Bank of Milwaukee, the plaintiff bank here. There was a rubber stamp usually used for substituting on such printed forms the name of the consolidated bank. Through inadvertence this stamp was not used, so that the draft, upon its face, was payable to the First National Bank of Milwaukee.

[1-4] If the plaintiff bank was the innocent holder for value of the draft and bill of lading, without notice of any failure of consideration or breach of contract by the grain company, then the judgment of the trial court is erroneous.

Under the circumstances here appearing, it is perfectly apparent that the failure to make the draft payable to the plaintiff bank is a mere inadvertent clerical error, because the bank to which it was made payable had been out of existence for nearly twelve months— that is, since June 30, 1919, the effective date of the consolidation. It was to the plaintiff bank that the draft was delivered by the drawer, and this bank discounted it. It was from the plaintiff bank that the drawer received cash credit for the amount of the draft, to whom the draft as well as the bill of lading was delivered, having been endorsed by the grain company. If attention had been drawn to this clerical error, the plaintiff bank would have had the right to avoid it, for Code, section 5605 (Negotiable Instruments Law), provides expressly, "Where the name of a payee or endorsee is wrongly designated or misspelled, he may endorse the instrument as therein described, adding, if he think fit, his proper signature." In this case, however, under the evidence and understanding of the parties, it would not have been

necessary to endorse the instrument in the name of the payee so wrongly designated, for the plaintiff bank clearly had the right to insert its own name as payee.

Under the circumstances of this case, this draft may well be construed to be payable to bearer, because Code section 5571 provides, among other things, that such an instrument is payable to bearer "when it is payable to the order of a fictitious or non-existent person and such fact was known to the person making it so payable." Now the uncontradicted fact here is that the First National Bank of Milwaukee had ceased to exist by that name, and it is proved that the grain company, constantly doing business with the consolidated bank, the plaintiff, knew of such consolidation and change of name; and that the nominal payee of its draft was a non-existent corporation. If thus payable to bearer, no endorsement was necessary. On the other hand, if it could be fairly contended that the nominal payee of the draft still existed as a corporation for any purpose, then under the consolidation agreement all of its property rights became vested in the plaintiff bank (with certain exceptions which it is unnecessary to consider) upon the effective date of this agreement. If this draft could, in any view, be held to be nominally the property of the First National Bank of Milwaukee, then by operation of the act of Congress and the agreement of consolidation made pursuant thereto, the plaintiff bank was its legal successor thereto in title. So that, in either event, this plaintiff was the legal holder of the draft.

[5] That a draft discounted under such circumstances and credited as cash to the drawer by a bank (subject to check), in good faith and without notice, vests the discounting bank with title and all of the rights of an innocent holder thereof for value, is settled in this State by the carefully considered case of *Fourth National*

*Bank* v. *Bragg*, 127 Va. 49, 102 S. E. 649, 11 A. L. E. 1034, note. It is unnecessary to repeat that discussion.

[6-8] The defendant then was the agent of the plaintiff bank, and under a high duty to protect and respect its rights as the holder of the draft in due course. While the letter of the defendant dated July 15th states that the bill of lading was delivered to the milling company July 7th, and the reply thereto of the plaintiff assumes that this is the date upon which the draft was paid, it otherwise appears in the record that the draft was paid July 2nd. There is no explanation whatever of the failure of the defendant to remit the proceeds during the period which elapsed between the date of this payment and July 8th, when the funds were attached, except the statement of the attorney for the defendant in his brief, that "It was entirely proper for the collecting bank to hold the money a few days, giving the parties a chance to settle without legal proceedings." We cannot agree that this is a sufficient explanation of such a delay, because the express instructions contained in the letter enclosing the draft were to protest it if not paid on presentment. It is not unfair to say that certainly with bankers it is a matter of common knowledge that there would have been no urgent reason for protesting the draft unless the plaintiff bank owned it and desired to hold the grain company to its responsibility as drawer. Instead of notifying its principal of the attachment proceeding promptly, it appears that although this attachment was levied on July 8th, five days after remittance of the funds should have been made, no notice thereof was given the plaintiff until July 15th, and then only in response to a telegraphic inquiry. The failure to reply to the various letters heretofore referred to, confirms the contention that the defendant was grossly negligent. On August 31st, the plaintiff wrote requesting the de-

fendant to "place this matter in the hands of reliable attorneys in your city to protect our interests." Notwithstanding this request and the knowledge that the plaintiff bank claimed the fund, the defendant thereafter, on September 6th, filed its answer in the attachment proceedings without even suggesting this claim to the funds which had been so definitely made by the plaintiff. No denial is made of the receipt of this letter. The only attempt at explanation is the statement that "The plaintiff had no right or authority to place upon the defendant in the court below the burden of employing attorneys and getting further mixed up in the transaction." We cannot agree that this is a sufficient explanation, or that it repels the implication of negligence. The request was natural, in accordance with custom, and it was the duty of the defendant, not only to its principal, the plaintiff, but also to the court in which the attachment proceedings were pending, to make a frank statement of these most essential and pertinent facts, which were absolutely necessary in order to enable the court to determine the true ownership of the fund so attached. This much was certainly due to the plaintiff bank as a matter of good faith. It was not necessary for the defendant to become a partisan of either claimant, or to involve itself in the slightest degree, but its duty to employ counsel at the expense of the plaintiff bank was clear. September 13th the plaintiff bank wrote the defendant inquiring as to the status of the matter, evidently relying, as it had a right to do, upon its belief that its interests were being protected. To this there was no reply until September 22nd, when it was reported that the money had been returned to the milling company pursuant to an order entered September 6th in the attachment proceedings, closing with the sentence, "So far as we are concerned, this closes the matter."

[9, 10] We cannot agree either with the defendant or with the trial court that the circumstances related can, in any event, be held conclusive against the plaintiff. Indeed, we are very clear in our view that the record shows that the plaintiff was the innocent *bona fide* holder of the draft, that the defendant was its agent for its collection, bound to account for its proceeds unless lawfully excused, and obliged to respond to the reasonable requests of its principal. Prompt and proper response to these requests would have enabled the plaintiff bank to intervene and establish its legal right to the fund involved in the attachment proceedings. Having so signally failed in the discharge of these several duties, the plaintiff bank is entitled to recover the amount of the draft so diverted to the milling company by the failure of the defendant to discharge its duty. Above all it is required of an agent that he be faithful to his principal. This is fundamental and for it there can be no substitute.

[11] The defendant might have declined to accept the agency, but having accepted it assumed the obligations thereby imposed.

Among these obligations was the duty to remit the proceeds of the draft promptly, pursuant to the customs of the business, and in accordance with the instructions of its principal, from whom its authority to collect it was derived. In this it failed, for it held these funds for six days in violation of the rights of its principal and without justification or excuse.

Another obligation was the duty to inform its principal frankly and promptly of the adverse claim of the milling company and of its assertion, by levy of the attachment, which sought to divert the fund from its principal, for whom it had been collected, and to return it to the milling company from which it had been so col-

lected. In this too it failed. For one week it withheld this vital information from its principal, and then only imparted it in response to a telegraphic inquiry.

Another duty, when it answered the attachment, was to disclose its agency to the court, as well as the fact that its principal, who was not a party to that litigation, also claimed the fund which was so held by it as agent. In this also it failed.

The request of its principal to employ an attorney to present its claim was a reasonable one. It imposed neither hardship nor expense. It should have been complied with, and the failure either to comply or to notify the principal of its refusal to do so adds to this catalogue of derelictions. Considered separately or collectively they conclusively show that the defendant has neglected its obvious duties as the plaintiff's agent. This course of action has resulted in the loss of the fund to the plaintiff which otherwise would not have occurred. If either of these duties had been performed, the fund would not have been diverted. If the plaintiff had been afforded the opportunity to intervene in the attachment, and its right at least to this opportunity is manifest, it could have shown the ownership which it here establishes, and hence would have there recovered.

We deem it unnecessary for us here to consider either the rights of the grain company, the debtor, or the milling company, the purchaser of the corn. It is likewise unnecessary for us to consider any other possible right or remedy which might have been available either to the plaintiff or to the defendant. We have, therefore, confined our discussion to the precise right here asserted by this plaintiff against this defendant.

The case has some novel features, but the sound principles upon which our conclusions are based are well illustrated by *First National Bank of Cincinnati* v.

*Felker* (C. C.), 185 Fed. 679, affirmed 196 Fed. 200, 116 C. C. A. 32. There a banker, entrusted with the duty of collecting drafts with bills of lading attached, delivered the goods, contrary to instructions, prior to the payment of the drafts and was sued by the bank, which had discounted the drafts, for the conversion of the goods and for their tortious delivery. It was held that the banker so delivering the goods was guilty of a tortious conversion thereof, and that the measure of damages for such conversion was the face value of the drafts, being the price of the goods, with legal interest from the date of the conversion. The defendant banker was not allowed to defend the action upon the ground that the plaintiff bank was responsible to the vendee of the goods so converted for breach of warranty by the vendor of the goods as to the character and quality thereof, because they were never in fact sold, the contemplated sale having been interrupted and defeated before delivery by the tortious conversion thereof by the collecting banker, and a recovery for such conversion was sustained.

There are many other interesting questions discussed in the very able briefs which are filed in the case, but a consideration of these questions cannot change the result. No valid defense has been interposed. We will, therefore, reverse the judgment of the trial court, and enter the judgment here for the plaintiff which, in our view, should have been entered in the court below.

*Reversed.*