# Richmond.

## W. P. ARWOOD v. HILL'S ADMINISTRATOR.

March 15, 1923.
[...]
Absent, Burks, J.

1. WITNESSES—*Transactions with Decedents or Persons Incapable of Testifying—Corroboration—Section 6209 of the Code of 1919.*—Section 6209 of the Code of 1919 is new and was intended to remove all disqualifications affecting the competency of witnesses in suits by or against the estates of persons laboring under disability or who are from any cause incapable of testifying. It was believed by the revisors that the provision requiring the testimony of such witnesses to be corroborated, together with the right of cross-examination, would be a sufficient protection to the estates of persons so incapable of testifying. The object of the statute was to remove disqualifications, not create them. And in the instant case the court erred in excluding the testimony of witnesses on the ground that they were interested or adverse parties and that their testimony had not been corroborated as required by law.

2. WITNESSES—*Transactions with Decedents or Incapable Persons—Corroboration—Exclusion of Testimony.*—Section 6209 of the Code of 1919 provides that, in an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against his representative, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.

   *Held:* That the proper practice under the statute is not to exclude the testimony of such interested or adverse party but to properly instruct the jury on the subject.

3. WITNESSES—*Transactions with Decedents or Incapable Persons—Corroboration—Exclusion of Testimony.*—If the jury disregard the instructions to the effect that they are not to return a verdict against an incapable person or his representative upon the uncorroborated testimony of an interested or adverse party, the remedy of the other party is a motion to set aside the verdict and grant a new trial, or for the court to enter a final judgment, as shall seem right and proper.

4. WITNESSES—*Transactions with Decedents or Persons Incapable of Testifying—Corroboration—Section 6209 of the Code of 1919—Case at Bar.*—

In the instant case plaintiff, a real estate broker, was asking for a judgment against the administrator of a landowner. Defendant's intestate had placed his property in the hands of one K., a real estate broker, for sale, and K. had asked plaintiff to obtain a customer, agreeing to share the commissions. K. refused to join the plaintiff in his action against the administrator and declined to make any charge for his services against the estate.

*Held:* That while plaintiff was an adverse or interested party, K. was not and was a competent witness, and that the jury should have been allowed to consider K.'s testimony in corroboration of the plaintiff and for other purposes.

5. WITNESSES—*Transactions with Decedents or Persons Incapable of Testifying—Corroboration—Section 6209 of the Code of 1919.*—The statute (section 6209 of the Code of 1919) does not undertake to prescribe the source from which the corroborating evidence shall come. It may come from the mouth of any competent witness, or any other legal source.

6. ESTOPPEL—*Inconsistent Positions—Election.*—A party cannot, either in the course of litigation or in dealings *in pais*, occupy inconsistent positions. Upon that rule election is founded; a man shall not be allowed, in the language of the Scotch law, "to approbate and reprobate." And where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts; the election. if made with knowledge of the facts, is itself binding, it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position.

7. BROKERS—*Real Estate Brokers—Right to Commissions.*—Where the agent produces a purchaser ready, able and willing to buy upon the owner's terms, the agent being the procuring cause of the sale, he is always entitled to his commissions.

8. BROKERS—*Real Estate Brokers—Right to Commissions.*—Where the principal consummates a sale to a purchaser found by the broker, he is liable for the commissions, although the sale is made at a smaller price than that originally proposed by the owner to the broker.

9. BROKERS—*Real Estate Brokers—Action for Commissions—Parties-Privity between Broker and Landowner—Section 5144 of the Code of 1919—Case at Bar.*—In the instant case plaintiff, a real estate broker, brought his action for commissions against the administrator of a landowner. The landowner had placed his property in the hands of another broker for sale, who had asked plaintiff to assist him in making a sale and agreed to share commissions with him.

*Held:* That the contract between the brokers was in effect an equitable assignment by the original broker to plaintiff of a one-half interest in the contract with the landowner, and that plaintiff under section

5144 of the Code of 1919 had the right to maintain an action in his own name to enforce the collection of his commission against the landowner's administrator.

10. ASSIGNMENTS—*Trusts and Trustees.*—The holder of the legal title in the assignment of things in action is frequently spoken of as the trustee and the holder of the equitable interest as the *cestui que* trust.

11. ASSIGNMENTS—*Equitable Assignments—Suit in Name of Assignee.*— Equity treats the assignee of a thing in action as succeeding to all the right and title of the assignor, as possessing a full interest in or ownership of the thing in action transferred and therefore permits him to maintain the proper suit in his own name. The assignee acquires an equitable interest which can be enforced in a suit in equity.

12. BROKERS—*Real Estate Brokers—Waiver of Claim for Services.*—K., a real estate broker, asked the plaintiff in the instant case to assist in finding a purchaser for certain land, agreeing to share commissions with him. The purchaser was obtained through plaintiff's efforts and plaintiff instituted the instant case for his commissions against the landowner's administrator. In this action K. refused to join and waived all claim for his services in making a sale. The total commissions were $1,400, and the jury brought in a verdict for $1,400 in favor of plaintiff.

*Held:* That as plaintiff was only entitled to one-half the commissions, *i. e.,* $700, the court erred in overruling a motion to set aside the verdict.

Error to a judgment of the Hustings Court of the city of Petersburg, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Chas. T. Lassiter* and *Robt. J. Francis*, for the plaintiff in error.

*Bernard Syme* and *Harry Snead*, for the defendant in error.

WEST, J., delivered the opinion of the court.

This is a suit to recover compensation for the sale of a tract of land owned by A. M. Hill in Prince George

county.   The jury returned a verdict for $1,400.00 in
favor of the plaintiff, subject to the court's ruling on the
demurrer to the plaintiff's evidence.   The demurrer was
sustained and final judgment entered for the defend-
ants.   The case is here upon a writ of error to that
judgment.

The plaintiff claims that the debt sued on arose by
contract between A. M. Hill, John F. Kolar and W. P.
Arwood and also for services rendered by W. P. Arwood
to A. M. Hill.   The defendant, R. B. Willcox, admin-
istrator, for grounds of defense contends that no con-
tract ever existed between A. M. Hill, John F. Kolar
and W. P. Arwood for the sale of Hill's farm, and that
no services were rendered by W. P. Arwood to A. M.
Hill.

In 1919, A. M. Hill, of Petersburg, entered into an
oral agreement with John F. Kolar, a real estate agent,
to sell certain factory property in the city of Peters-
burg and a tract of timber land in Prince George county
containing 237 acres.   Hill instructed Kolar to ask
$15,000.00 for the land in Prince George, but any offer
secured under $15,000 was to be submitted for his ap-
proval.

For several years prior to and at that time Kolar had
an agreement with W. P. Arwood, who was also en-
gaged in the real estate business, by which Arwood fre-
quently assisted Kolar in the sale of timber and timber
lands, and, in such cases, they divided the commissions
between them, in equal shares.   Under this agreement
Kolar was not liable to Arwood for any uncollected com-
missions.

After making the agreement with Hill, Kolar in-
structed Arwood to find a purchaser for the Prince
George land.   Arwood took several parties to see the
land and finally in January, 1920, succeeded in interest-

ing H. A. Gray and got him to come to Petersburg, where Gray and Arwood were taken to the property by Kolar and went over the land together. H. A. Gray and his brother, E. L. Gray, were old customers of Arwood and had frequently purchased timber lands from him.

After Gray and Arwood finished looking over the land, all three returned to Kolar's office in Petersburg, where Gray offered $12,000 cash for the property. Arwood and Gray waited at the office while Kolar went to the home of Hill, who was sick, to submit Gray's offer. Hill declined the offer of $12,000 and stated that he had promised another party a short option on the property at $14,000, part cash and the balance in deferred payments, and would wait to hear from him.

Before leaving for the south on a business trip, Arwood called on Hill at his home and urged him to accept the offer of Gray, telling him he had frequently sold property to the Gray brothers; that they always paid cash; and that $12,000 cash was better than a larger sum on time. Hill referred to Kolar in the conversation, saying that Kolar had had the property in hand so long that he had about made up his mind that Kolar was not going to sell it. Arwood explained to Hill that his reason for coming to see him personally was that Kolar was out of the city. Hill stated that although he had withdrawn his city property from Kolar's hands, if Arwood got a customer for some good city property he wished him to call his attention to it, to which Arwood replied that he had never tried to handle city property and was not familiar with values in the city of Petersburg.

Shortly after seeing Hill, Arwood 'phoned Gray that he could get the property at $15,000. Several weeks later, while Arwood was in the South and Kolar in the

West, H. A. Gray, whose attention was first called to the property by Arwood, went over the property with his brother, E. L. Gray, and one of them went to Richmond to see Colonel Leroy Hodges, a friend of Hill, who was looking after this matter during the latter's illness, and made an offer of $14,000 cash, which was accepted by Hill, and, on March 8, 1920, Hill conveyed the property to H. A. and E. L. Gray by good and sufficient deed.

Upon learning that Hill had sold and deeded the property to a purchaser whom he had procured, Arwood wrote Hill demanding pay for his services, but on account of the latter's illness he received no reply. A few weeks later Hill died.

Kolar, on account of his close personal relations with Hill and Colonel Hodges, who was Hill's brother-in-law, and the way the deal was closed, declined to make any charge for *his* services against Hill's estate and refused to join Arwood in a suit against Hill's administrator. Whereupon Arwood instituted this suit making Kolar a co-defendant with Hill's administrator. Kolar testified that Arwood ought to have a part of the commissions for his services, but he (Kolar) preferred to "have nothing to do with it." Arwood testified he would be satisfied with one-half of the usual commission. The uncontradicted testimony is that the usual commission on a sale of farm land in the vicinity of Petersburg, where no commission was mentioned or agreed upon, as in the instant case, is ten per cent.

The foregoing are among the material facts introduced in evidence on behalf of the plaintiff. The defendant introduced no evidence.

The plaintiff relies upon two assignments of error. [1-3] His first assignment is to the action of the court

in excluding the testimony of W. P. Arwood and John F. Kolar. The able and learned judge of the trial court based his ruling upon the ground that they were *interested and adverse* parties and that their testimony had not been corroborated as required by the statute.

The statute, section 6209, Code 1919, provides as follows:

"In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

This section of the Code is new and was intended to remove all disqualifications affecting the competency of witnesses in suits by or against the estates of persons laboring under disability or who are from any cause incapable of testifying. It was believed by the revisors that the provision requiring the testimony of such witnesses to be corroborated, together with the right of cross-examination, would be a sufficient protection to the estates of persons so incapable of testifying. The object of the statute was to remove disqualifications, not create them. It is clear from the very language of the statute that both Arwood and Kolar were *competent* witnesses to testify in the case and the court erred in excluding their testimony.

The proper practice in such cases is for the court not to exclude the testimony of such *interested* or *adverse* party but to properly instruct the jury on the subject. If the jury disregard such instructions and return a ver-

16

dict founded upon the *uncorroborated* testimony of such interested or adverse party, the remedy of the other party is a motion to set aside the verdict and grant a new trial, or enter a final judgment, as shall seem right and proper.

[4, 5] Arwood is asking for a judgment against the administrator of a person incapable of testifying. He is admittedly an adverse or interested party, and, as applied to the instant case, the statute simply provides that no judgment shall be rendered in *his* favor upon *his* uncorroborated testimony. John F. Kolar is not an adverse or interested party, *in whose favor a judgment* is being sought, and is a competent witness. The statute does not undertake to prescribe the source from which the corroborating evidence shall come. It may come from the mouth of any competent witness, or any other legal source, and the jury should have been allowed to consider Kolar's testimony in corroboration of Arwood and for other purposes.

In the case of *Robertson's Ex'r* v. *Atlantic Coast Realty Co.,* 129 Va. 505, 106 S. E. 521, this court in discussing the testimony which, under the terms of the statute, must be corroborated, said: "In order to require corroboration, there must be a witness who testifies in the cause, and he must be seeking a judgment or decree in his favor, and thus be 'an adverse or interested party.' "

It is true that the above quotation is immediately followed by this language: "He must in some way be beneficially interested in the judgment or decree which is sought to be obtained on his testimony against a party who is incapable of testifying, or some representative of such party." The language last quoted was not intended to qualify the language which immediately preceded it, *supra,* to the effect that the party *must be seek-*

*ing a judgment in his favor;* nor to restrict the language of the statute that "no judgment or decree shall be rendered *in favor of an adverse or interested* party founded on *his* uncorroborated testimony."

Upon the evidence the plaintiff cannot in any event recover of Hill's administrator a sum in excess of $700 with interest and costs. No portion of this amount would belong to Kolar, and being a party to the suit and having stated that he makes no claim for his services he cannot be said to be beneficially interested in the judgment which is sought to be obtained.

Besides, it appears from the evidence that Kolar has elected to waive *his* claim against the Hill estate for *his* services and refused to join Arwood in a suit to collect any compensation from the administrator.

[6] A party cannot, either in the course of litigation or in dealings *in pais*, occupy inconsistent positions. Upon that rule election is founded; a man shall not be allowed, in the language of the Scotch law, "to approbate and reprobate." And where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts; the election, if made with knowledge of the facts, is itself binding, it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position. Bigelow on Estoppel, page 733.

By such election and waiver in the instant case Kolar is estopped from seeking a recovery of any compensation for *his* services from Hill's estate.

It appears from the uncontradicted evidence that Hill placed the farm in Kolar's hands for sale, without saying anything about what Kolar's compensation should be, in the event of a sale; that the usual commission in such cases in that section was ten per cent.; that Kolar

told Arwood to find a buyer for the property, with the usual understanding that Arwood should receive one-half of the lawful commission earned in such cases; that Arwood showed the property to several prospective buyers and finally procured H. A. Gray as a purchaser and showed him over the property; that Gray offered $12,000.00 cash, which was declined, and was able, ready and willing to take the property at a price satis-factory to the owner, as shown by the fact that later, he, with his brother, E. L. Gray, did buy the property di-rectly from the owner at $14,000.00 cash, that being less than Hill instructed Kolar to ask for it.

[7] Where the agent produces a purchaser ready, able and willing to buy upon the owner's terms, the agent being the procuring cause of the sale, he is always en-titled to his commissions. *Zeimer* v. *Antisell,* 75 Cal. page 509.

[8] Where, for example, the principal consummates a sale to a purchaser found by the broker, he is liable for the commissions, although the sale is made at a smaller price than that originally proposed by him to the broker. 9 Corpus Juris 600, and cases cited.

In *Paschall* v. *Gilliss,* 113 Va. 654, 75 S. E. 220, this court quoted with approval from the opinion of the court in *Hovey* v. *Aaron,* 133 Mo. App. 573, 113 S. W. 718, as follows: "If defendant, while plaintiff's author-ity to sell stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs, for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruits of the plaintiff's labor, and then deny them their just reward." Citing *Kock* v. *Emmerling,* 22 How. (U. S.) 69, 72, 16 L. Ed. 292; *Carnes* v. *Finigan,* 198 Mass. 128, 84 N. E. 324; *Henry* v. *Stewart,* 185 Ill. 448, 57 N. E. 190, and other cases.

In *Martin* v. *Silliman*, 53 N. Y. 615, the law was stated thus: "Where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or the negotiations so commenced, takes it into his own hands and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission."

It is clear that barring the waiver of his rights, Kolar had the right in the first instance, in a suit brought by him for that purpose, to recover of Hill's administrator the sum of $1,400.00, with interest and costs, one-half of which, in such event, he would have held in trust for Arwood.

[9] The defendant in error contends that Arwood cannot recover because there is no privity of contract shown between him and Hill. Section 5144, Code of 1919, reads as follows:

"When the legal title to any claim or chose in action, for the enforcement of the collection of which a court of equity has jurisdiction, is in one person and the beneficial equitable title thereto is in another, the latter may either maintain a suit in the name of the holder of the legal title for his use and benefit or in his own name to enforce collection of the same. In either case the beneficial equitable owner shall be deemed the real plaintiff and shall be alone liable for costs."

The contract between Kolar and Arwood was in effect an equitable assignment by the former to the latter of a one-half interest in Kolar's contract with Hill.

[10] The holder of the legal title in the assignment of things in action   *   *   *   *   is frequently spoken of as the trustee and the holder of the equitable interest as the *cestui que* trust. 1 Pomeroy's Equity Jurisprudence, section 149.

[11] Equity treats the assignee of a thing in action as succeeding to all the right and title of the assignor, as possessing a full interest in or ownership of the thing in action transferred and therefore permits him to maintain the proper suit in his own name. The assignee acquires an equitable interest which can be enforced in a suit in equity. 1 Pom. Eq. Juris., section 137.

Kolar having waived his right to charge for his own services, the legal title to the remaining half of the claim for commission, which in equity belonged to Arwood, being in Kolar, and he having refused to assert this claim for the benefit of Arwood, Arwood would have had the right to proceed in equity against Kolar and Hill and equity would have "put the saddle on the right horse" by granting Arwood a decree against Hill's administrator for his half of the commissions.

This being true, Arwood has the right, under section 5144, *supra*, to maintain this suit in his own name to enforce the collection of his claim against Hill's administrator.

[12] Since the court erred in excluding the evidence of Kolar and Arwood before passing upon the demurrer to the evidence, it follows that its ruling on said demurrer brought about an erroneous result. There being no evidence to support a verdict in favor of the plaintiff for more than $700.00, the court likewise erred in overruling the plaintiff's motion to set aside the verdict of the jury.

For the foregoing reasons we are of the opinion that the plaintiff is entitled to recover nothing against John F. Kolar, and that the judgment complained of should be reversed and the case remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*