# Richmond.

## LAFAYETTE W. ROBINSON, ET ALS., V. JOHN E. SHEPHERD, ETC.

### November 15, 1923.

1. MISTAKE AND ACCIDENT—*Mistake of Fact—Materiality—Equitable Relief.*—To obtain relief in equity on the ground of mistake of fact, the fact concerning which the mistake is made must be material to the transaction, affecting its substance.

2. MISTAKE AND ACCIDENT—*Mistake of Law—Whether Mistake as to Ownership of Property is a Mistake of Law or Fact.*—It is the general rule that a mistake of law is not ground for equitable relief, and upon the question of whether a mistake as to the ownership of property is a mistake of fact, or a mixed mistake of law and fact, the authorities are divided.

3. MISTAKE AND ACCIDENT—*Mistake of Law—Whether Mistake as to Ownership of Property is a Mistake of Law or Fact.*—But in Virginia it is the rule that whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property, or contract, or personal status, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact. This rule, however, has no application to cases of compromise, nor has it any application to that portion of the land, in a contract to convey land, of which the vendor owns only a part, as to which there was no mistake of law or material fact.

4. MISTAKE AND ACCIDENT—*Mistake of Law—Whether Mistake as to Ownership of Property is a Mistake of Law or Fact—Case at Bar.*—The owner in fee simple of a one-half interest in a parcel of land, who was also tenant by curtesy of the other half of the property, and who believed himself to be the owner in fee simple of the whole estate, contracted to convey the whole property.

   *Held:* That the contract was binding upon the owner as to his entire interest and the vendee had the right to bring suit for and have

specific performance as to that interest, with abatement for the deficiency in title.

5. VENDOR AND PURCHASER—*Specific Performance—Incapacity of Vendor to Convey Whole of Property.*—Although a purchaser cannot have a partial interest forced upon him, yet if he entered into a contract, not knowing of the vendor's incapacity to convey him the whole, he is entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement of the purchase money for any deficiency in title, or quantity, of the estate.

6. VENDOR AND PURCHASER—*Mutual Mistake—Ratification of Contract after Discovery of Mistake—Case at Bar.*—The owner in fee simple of a one-half interest in a parcel of land, who was also tenant by curtesy of the other half of the property, and who believed himself to be the owner in fee simple of the whole estate, contracted to convey the whole property. After discovering his mistake the owner instituted a partition suit having for its object the enforcement of the contract.

   *Held:* That he thereby ratified the contract and was estopped to contend that the contract was void for mutual mistake of fact and could not be enforced.

7. ESTOPPEL—*Election Between Inconsistent Courses—Case at Bar.*—Where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts. The election, if made with knowledge of the facts, is itself binding; it cannot be withdrawn though it has not been acted upon by another by any change of position. Thus, where a vendor has asked the court to enforce a contract of sale by confirming the sale, he cannot be afterwards heard to question the validity of the contract.

8. VENDOR AND PURCHASER—*Termination Clause of Contract—Waiver—Case at Bar.*—A contract of sale provided that if the vendor was unable to deliver a satisfactory deed, the contract should automatically expire without further liability on the part of either of the parties. The vendor discovered that his son owned an interest in the real estate and upon conference with attorneys of the vendee at once filed a suit for the purpose of perfecting his title, in order to deed the property to the vendee at the contract price. The parties regarded the contract as in full force, and were endeavoring to carry it into execution until the court received an upset bid.

   *Held:* That by their conduct they waived the termination clause in the contract.

9. INTERPRETATION AND CONSTRUCTION—*Practical Construction by the Parties.*—No rule for the construction of written instruments is better settled than that which attaches great weight to the construction put upon the instrument by the parties themselves.

10. VENDOR AND PURCHASER—*Infants—Practice where Party Sells Real Estate in which Infant Holds an Interest.*—Where a party sells another

real estate in which an infant holds an interest, the contract is always construed as subject to the approval of the court, so far as the interests of the infant are concerned. A bill for partition is filed, and evidence taken to prove that the land cannot be partitioned in kind, and that it will be to the interest of the infant to sell it to the vendee at the price agreed, and that the price is adequate and fair. If no upset bid is put in, the sale is confirmed at the price named, as a matter of course. The court's duty is to protect the interests of the infant, but in so doing it does not dissolve the contract between the original parties, and the vendor cannot, so far as his interest in the land is concerned, by "hiding behind the back of the infant," release himself from his contract obligations with the vendee.

11. VENDOR AND PURCHASER—*Vendee Equitable Owner—Public Sale of Land—Vendee's Right where Land Brings Higher Price than he Contracted to Pay—Case at Bar.*—The owner in fee simple of a one-half interest in a parcel of land, who was also tenant by curtesy of the other half of the property, and who believed himself to be the owner in fee simple of the whole estate, contracted to convey the whole property. Under the terms of this contract the vendee became the equitable owner of the vendor's interest in the land, and when the land was sold in partition proceedings the vendee was entitled to one-half the difference between the public sale price and the price he had contracted to pay for it, together with interest on the remaining one-half of the advance, less taxes, until there was commutation of curtesy.

Appeal from a decree of the Corporation Court of the city of Charlottesville. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Gilmer & Graves,* for the appellants.

*L. T. Hanckel* and *Albert S. Bolling,* for the appellees.

WEST, J., delivered the opinion of the court.

This is an appeal from two decrees of the Corporation Court of the city of Charlottesville, adjudicating

the principles of the cause and directing the payment of $825.00 to John E. Shepherd.

In March, 1916, James H. Ferguson conveyed a small parcel of land in Charlottesville, Virginia, to his daughter, Rebecca B. Robinson, and her husband, L. W. Robinson. In October, 1918, Rebecca B. Robinson died intestate, leaving as her sole heir at law her only child, L. W. Robinson, Jr., an infant four years old, to whom her interest in the property descended, subject to the curtesy of her husband. In 1921, L. W. Robinson married a second wife, Nellie W. Robinson.

Believing that upon the death of his wife her interest in the property passed to him, on December 21, 1921, L. W. Robinson, acting through his agents, L. W. Smith & Co., entered into a written contract to sell the land to John E. Shepherd for $9,000.00, to be paid $1,000.00 cash, upon delivery of a good and sufficient warranty deed, the assumption of a lien for $2,500.00 and the execution of second lien bonds for $5,500.00 payable on or before five years from date. As evidence of good faith the vendee paid $250.00, as a part of the cash payment.

The contract contained the following provisions: "It is understood and agreed that the undertakings of the vendee hereunder are dependent upon the delivery by the vendor of a good and sufficient title, and that if any defects arise in the title, the vendor shall have a reasonable time in which to cure them, and this the vendor undertakes to do.   *   *.

"If the vendor is unable to deliver a satisfactory title and deed, the said $250.00 shall be returned to the vendee and this contract shall automatically expire without further liability on the part of any of the parties hereto."

At the request of Smith, the land agent, L. W. Rob-

inson's attorney prepared and tendered a deed to Shepherd, signed by L. W. Robinson and wife, conveying the property to him, and reciting that on the death of Rebecca B. Robinson, her interest passed to L. W. Robinson. Shepherd's attorneys promptly disapproved the title and rejected the deed. Attorneys for the parties agreed that the deed did not pass title to the interest of the infant.

After conferring as to the form of procedure to be adopted to perfect the title, counsel for the parties agreed on a suit for partition to sell the infant's interest in the property, and L. W. Robinson's attorney prepared and filed the original bill in this cause, in the name of Robinson and wife against L. W. Robinson, Jr., alleging the property was not susceptible of partition in kind, that the same should be sold and the proceeds divided, and that the offer of J. E. Shepherd to buy the property at $9,000.00 should be accepted. Nothing was said in the bill about the written contract between Robinson and Shepherd, above mentioned.

Depositions were taken to prove that the property was not susceptible of partition in kind and that the offer of J. E. Shepherd was a good one and should be accepted. Upon the hearing the court endorsed "to be entered" on the back thereof, and delivered to the clerk a decree accepting the bid of J. E. Shepherd for the property. Before this decree was actually spread upon the order book, Nelton B. Whiting filed an upset bid of $10,000.00.

Shepherd then filed an answer and cross-bill to the petition of N. B. Whiting, filed in the cause, claiming that he had a binding contract with L. W. Robinson for the purchase of the property and asking that the contract of December 21st be specifically enforced. By decree of February 10, 1922, the court ordered the prop-

erty sold at public auction, starting the bidding at Whiting's offer of $10,000.00, and expressly reserving its decision as to the rights and liabilities between Robinson and Shepherd. The property was sold on February 28, 1922, and knocked out to Standard Gas and Oil Supply Company at the sum of $10,650.00. This sale was confirmed by the decree of March 11, 1922, in which the rights and liabilities of Robinson and Shepherd were again reserved for further consideration.

On May 9, 1922, a decree was entered denying the motion of L. W. Robinson to strike out the cross-bill of J. E. Shepherd.

Depositions were taken on behalf of Shepherd and Robinson and on the hearing on August 18, 1922, a decree was entered allowing J. E. Shepherd the sum of $825.00, all of Robinson's one-half of the advance of $1,650.00 of the public sale over J. E. Shepherd's contract price of $9,000.00, and also interest on the remaining $825.00 of the advance, less taxes, until such time as there may be a commutation of curtesy, or other changes in the conditions of the parties.

The decrees of May 9, 1922, and August 18, 1922, are the decrees complained of.

The appellant assigns as error the action of the court—

1. In refusing to hold that the contract was void for mutual mistake of fact.

2. In refusing to hold that the contract was discharged in pursuance of the terms thereof by reason of the inability of L. W. Robinson to make a good deed.

3. In allowing J. E. Shepherd $825.00 and interest.

(a) *Mutual Mistake.*

[1] There is evidence tending to prove that at the time the parties entered into the written contract of

December 21st each of them was under the impression that Lafayette W. Robinson, Sr., was the sole owner of the property.

[2, 3] Upon the question whether a mistake as to the ownership of property is a mistake of fact, or a mixed mistake of law and fact, the courts are divided.

The fact concerning which the mistake is made must be material to the transaction, affecting its substance. 2 Pomeroy's Eq. Jur. (4th ed.), 147, sec. 856.

In *Burton* v. *Haden*, 108 Va. 58, 60 S. E. 738, 15 L. R. A. (N. S.), 1038, this court quoted with approval Pomeroy, at section 849, as follows:

"Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract, or personal status, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact. It should be carefully observed that this rule has no application to cases of compromise where doubts have arisen as to the rights of parties, and they have intentionally entered into an arrangement for the purpose of compromising and settling those doubts. Such compromise, whether involving mistakes of law or of fact, are governed by special considerations.

In 13 C. J., p. 379, sec. 268, the law is stated thus: "To the general rule that mistake of law is not ground for relief, there are certain exceptions or apparent exceptions. Mistake as to particular private rights is treated as mistake of fact or as a mixed mistake of law and fact.

Private rights of property, although they are the result of rules of law, or depend on rules of law applied to the construction of legal instruments, are usually considered matters of fact."

In *Livingstone* v. *Murphy*, 187 Mass. 315, 72 N. E. 1012, 105 Am. St. Rep. 400, the court said: "A mistake as to the ownership of land is a mistake of fact in regard to which equity will grant relief, although the mistake arose from an erroneous view of the legal effect of a deed."

In *Webb* v. *City of Alexandria*, 33 Gratt. (74 Va.) 168, we find this: "While it is the general rule that mistakes in matter of law cannot be admitted as ground of relief, it is not a rule of universal application, especially in courts of equity. It is not an absolute and inflexible rule, but has its exceptions, though such exceptions, in the language of Judge Story, are few and generally stand upon some very urgent pressure of circumstances. If the maxim is used in the sense of denoting general law, the ordinary law of the country, no exception can be admitted to its general application, but it is otherwise when the word 'jus' is used in the sense of denoting a private right. If a man, through misapprehension or mistake of the law, parts with or gives up private rights of property or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired."

As stated by Pomeroy, *supra*, this rule has no application to cases of compromise. Nor has it any application to that portion of the land as to which there was no mistake of law or material fact.

[4] Lafayette W. Robinson was the absolute fee

simple owner of a one-half interest in the property, and a tenant by curtesy of the other half of the property. Shepherd is not trying to hold Robinson liable for his failure to make a good and sufficient warranty deed for the infant's interest in the land; nor did the lower court decree against him as to that interest. The contract is certainly binding on L. W. Robinson as to his entire interest in the land, and Shepherd had the right to bring suit for and have specific performance as to that interest.

[5] Although a purchaser cannot have a partial interest forced upon him, yet if he entered into a contract not knowing of the vendor's incapacity to convey him the whole, he is entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement of the purchase money for any deficiency in title, or quantity, of the estate.

In *White* v. *Dobson*, 17 Gratt. (58 Va.) 266, where there were two parcels of land embraced in the contract, the court held that if the vendor can make a good title to but one parcel the vendee is entitled to have a conveyance of that parcel, if he will pay the stipulated price of that parcel, and accept it in full satisfaction of the contract.

In *Clarke* v. *Reins*, 12 Gratt. (53 Va.) 98, where the wife was one of three joint owners of the land, the husband alone having united in the sale, the court declined to compel the husband and wife to execute the contract on their part, but decreed that the other two joint owners will be compelled to convey their undivided interests, upon the payment by the vendee of their shares of the purchase money.

In *Mortlock* v. *Buller*, 10 Ves. R. 292, 316, Lord Eldon says: "If a man having partial interests in an estate chooses to enter into a contract representing it and

agreeing to sell it as his own, it is not competent for him to say afterwards, though he has valuable interests, he has not the entirety, and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract; and if the vendee chooses to take as much as he can have, he has a right to that and to an abatement."

In *Dunsmore* v. *Lyle*, 87 Va. 393, 12 S. E. 611, we find this: "While a purchaser, however, cannot be compelled to take a defective title, but has a right to insist upon a clear legal title, on the other hand, though the vendor cannot make the title he contracts to make, yet he may be compelled to convey such title as he has, and to compensate for the defect; nor does it lie for him to object for the want of a complete title in him."

[6] If it were true, as claimed by the appellants, that the entire contract was void for mutual mistake of fact, in the first instance, which cannot be conceded, appellant, L. W. Robinson, after full knowledge of his title by both parties, by his conduct in instituting the partition suit having for its object the enforcement of the contract, ratified it and is estopped to contend that the contract is void and cannot be enforced.

"Where a party to a transaction induced another to act upon the reasonable belief that he has waived, or will waive, certain rights, remedies or objections which he is entitled to assert, he will be estopped to insist upon such rights, remedies, or objections, to the prejudice of the one misled. The doctrine of estoppel by waiver, it has been said, applies in any case to determine the rights of the parties from the time when a mistake of law or fact becomes known to the party whose rights are affected." 23 C. J., sec. 247, p. 1241.

[7] "Where a man has an election between several in-

consistent courses of action, he will be confined to that course which he first adopts. The election, if made with knowledge of the facts, is itself binding; * * * it cannot be withdrawn though it has not been acted upon by another by any change of position." *Arwood* v. *Hill's Adm'r*, 135 Va. 235, 243, 117 S. E. 605; Bigelow on Estoppel, p. 733.

Having asked the court to enforce the contract by confirming the sale of the property to Shepherd at his contract price, $9,000.00, called in the bill his bid, Robinson cannot be heard to question the validity of the contract.

### (b) *Contract Terminated by Its Terms.*

[8] The appellant, relying upon the following clause in the contract: "If the vendor is unable to deliver a satisfactory deed, the said $250.00 shall be returned to the vendee and this contract shall automatically expire without further liability on the part of any of the parties thereto," contends that upon the failure of Robinson to deliver a satisfactory deed, the contract expired.

It clearly appears from the evidence that as soon as it was ascertained that Robinson's son owned an interest in the real estate, his attorneys conferred with Shepherd's attorneys as to the best method to pursue to pass a satisfactory title to the entire property to Shepherd at the price he agreed in the contract to pay for it. Robinson's attorney wrote him at once at Cumberland, Maryland, informing him that Shepherd's attorney had declined to accept a deed from him alone because of the interest of Robinson's son in the land, and telling him a friendly suit would have to be brought so that the court can convey the interest of the minor child. Robinson at once filed a suit in chancery for the purpose of per-

fecting the title in order to deed the property to Shepherd at his contract price. Robinson himself testifies that he instituted the chancery suit "not to offset his (Shepherd's) contract, but confirm his contract."

In his supplemental bill Robinson used the following language: "And the rights and liabilities of John E. Shepherd and your complainant under said *contract for sale* of this land, and the rights and liabilities of all parties thereto in regard to said land, and the *contract* concerning the same, may be fully adjudicated in this cause," etc. A decree was entered with the consent of L. W. Robinson's counsel allowing W. L. Smith $450.00 commissions as claimed by him in his answer for effecting the sale to John E. Shepherd.

Shepherd's counsel were informed as to, and approved of, every step taken in the partition suit, knowing its object was to give him a deed to the entire property at the price he contracted to pay for it.

When the upset bid was put in, Shepherd, seeing that the method agreed on to enforce the contract might prove abortive, filed his answer and cross-bill to Whiting's petition, setting up the contract of December 21st and all the facts and circumstances surrounding the case, and alleging that he had had no intimation that Robinson wished to do aught save carry out the terms of his contract, and insisting that he is entitled to have specific performance of the contract as to the complainant, L. W. Robinson, and is entitled as against the complainant to have the one-half undivided interest of the complainant in fee and the curtesy right of the complainant in the other half interest conveyed to him on the *pro rata* basis of $9,000.00.

There was no occasion for Shepherd to mention the written contract until it appeared that he would be unable, on account of infant's interest, to get the land at the agreed price of $9,000.00.

The $250.00 earnest money was not returned to Shepherd until *after* the upset bid had been put in. It was then apparent that in order to protect the interests of the infant the court would have to sell the property at public auction to the highest bidder.

[9] Under the foregoing facts and circumstances, we are of opinion that the parties regarded the contract of December 21st as in full force and were endeavoring at all times, until the court received the upset bid, to carry it into execution, and that by their conduct they waived the termination clause in the contract. As said by Judge Prentis in *Holland* v. *Vaughan*, 120 Va. 324, at p. 328, 91 S. E. 122, at p. 124: "No rule for the construction of written instruments is better settled than that which attaches great weight to the construction put upon the instrument by the parties themselves."

(c) *Allowing to J. E. Shepherd $825.00 and Interest.*

[10] The record fails to sustain the contention of the appellee that the court allowed this sum of money to Shepherd by way of damages for Robinson's failure to convey him a fee simple title to the entire property.

The question of damages is nowhere involved in the instant case.

This case was conducted in all respects in accordance with the usual practice in the courts of this State, where a party sells another real estate in which an infant holds an interest. The contract is always construed as subject to the approval of the court so far as the interests of the infant are concerned. A bill for partition is filed and evidence taken to prove that the land cannot be partitioned in kind and that it will be to the interest of the infant to sell it to the vendee at the price agreed upon by the parties in their contract, and that the price is adequate and fair.

If no upset bid is put in the sale is confirmed at the price named, as a matter of course.

The court's duty is to protect the interests of the infant, but in so doing it does not dissolve the contract between the original parties and the vendor cannot, so far as his interest in' the land is concerned, by "hiding behind the back of the infant," release himself from his contract obligations with the vendee.

[11] Under the terms of the written contract Shepherd was the equitable owner of L. W. Robinson's interest in the land, and when Commissioner Gilmer collected the $10,650.00 for the property the court properly held that Shepherd was entitled to have paid to him $825.00, one-half the difference between the public sale price and the price he had contracted to pay for it, together with interest on the remaining $825.00 of the advance, less taxes, until there was commutation of curtesy.

The decree will be affirmed.

*Affirmed.*