# Wytheville

## M. D. White v. Walter M. Bott.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

Reheard Richmond, March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*Antonio J. Smith* and *James G. Martin,* for the plaintiff in error.

*Page, Page & Page,* for the defendant in error.

Holt, J., delivered the opinion of the court.

In this action plaintiff sought to recover from the defendant $3,000.00 charged to be due to him on account of his services as a real estate agent. His claim grew out of this contract:

"June 25, 1928.

"M. D. White and Company,
    "Norfolk, Virginia.
"Dear Sirs:

"I hereby submit the following offer for the Westover Terrace Apartments, together with all the land and appurtenances thereto belonging, including the part of the lot in the rear to the trellis thereof, also the frigidaires, awnings, . screens, etc.

"Will give the property at the southwest corner of 31st street and Omohundro avenue, with the loan of seven thousand ($7,000.00) dollars thereon; the two-family No. 360 W. 13th street, with the loan of four thousand ($4,000.00) dollars thereon; No. 1236 Westover avenue, with the loan of eleven thousand, five hundred ($11,500.00) dollars thereon, (all of said loans to be assumed by the owner of the Westover Terrace); also No. 525 Herman avenue, clear of all liens; and note for three thousand, five hundred ($3,500.00) dollars, second mortgage, secured on the 'Harrison Apartments;' will also assume the loan of forty-eight thousand ($48,475.00) dollars now on the 'Westover Terrace' and pay thirty-three thousand, five hundred ($33,500.00) dollars in cash.

"All rents, interest, taxes and insurance to be prorated as of date of settlement, which is to be on or before August 1, 1928.

"I enclose check for one thousand ($1,000.00) dollars to

bind the bargain, same to be credited on the purchase price or returned if deal is not closed.

"Yours very truly,

"NORWOOD G. CARROLL

"per J. EARNEST THACKER (Seal)

"J. EARNEST THACKER (Seal)

"I hereby accept the above offer, and acknowledge receipt of one thousand ($1,000.00) dollars; and agree to pay M. D. White and Company as agents, the regular real estate commission on 'Westover Terrace' at $115,000.00, amounting to twenty-five hundred and 00/100 ($2,500.00) dollars.

"This good until Wednesday the 27th-1928 at noon.

"W. M. BOTT.

"June 26, 1928.

"M. D. WHITE AND COMPANY:

"It is understood I am due you an additional $500.00 (five hundred dollars) commission a/c sale Westover Terrace Apartment at time is consummatéd on or about August 1, 1928. This is in addition to that stated in contract.

"W. M. BOTT."

There was a verdict and judgment for the defendant. Plaintiff claims that they are contrary to the law and to the evidence. During the negotiations which accompanied the purchase, Mr. W. C. Etheridge represented the plaintiff and took Mr. Bott to see the various properties which he was to accept in part payment for the Westover Terrace Apartments. It is charged that Etheridge on that occasion misrepresented their physical condition, the terms upon which they were rented and the rent roll. This he denies, and here we have a sharp conflict of evidence. Since the evidence is in sharp conflict it is amply sufficient, if that

verdict can be sustained on the issue of fact here submitted and decided, or on any other issue of fact properly submitted.

■ It was Bott's duty to repudiate this contract when he ascertained that these misrepresentations had been made to him, and to state his reasons for such a repudiation.

■ "When a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud. If after the discovery of the fraud he treats the contract as a subsisting obligation, he will be deemed to have waived his right of repudiation. Prompt action is essential when one believes himself entitled to a rescission of a contract." *Finch* v. *Garrett*, 109 Va. 114, 63 S. E. 417, 418. See, also, *Wright, Inc.* v. *Shackelford*, 152 Va. 635, 148 S. E. 807, where many authorities to this effect are cited.

In direct examination, Bott said:

"Q. After you found the condition of this property as it was, tell the jury whether or not you said anything to Mr. Etheridge about what you found?

"A. I didn't say anything to Mr. Etheridge about the driveway especially because I stopped talking to him at that time.

"Q. What did you say to him about the condition of the premises and the tenancy?

"A. I told him he had misrepresented the property on Thirteenth street. We were walking up Granby street and I told him that and he said: 'Bott, if you want to back out of it and you will give me some commissions I will be glad to let you out of the deal,' and I said: 'No, I am not going to pay any commissions on it. I have not gotten to that point yet.' "

■ All that can be said of this is that Bott stated to Etheridge that he would pay no commissions. Manifestly he could not claim under his contract of purchase and refuse to pay.

That there was at that time no intention on his part to

repudiate is made plain by the fact that he afterwards retained counsel to examine these titles. Moreover, Mr. Smith, counsel for plaintiff, talked with Mr. Bott over the 'phone in reply to a suggestion from that gentleman, and then stated to him that they were willing to convey the Thacker property "to anyone he wished us to, that under the contract he was to assume all liens on all the property and that the contract was specific and if we conveyed it to any other person there would be no assumption by him, but if he could fix some way to assume the liens we would be perfectly willing to have another grantee in the deed." This is out of harmony with any purpose to repudiate.

Mr. Bott further testified that Etheridge "guaranteed" the title.

It is interesting to note the character of the defects relied upon, particularly those which it is said appear upon the face of the contract.

These objections in substance are that Mrs. Thacker did not sign the contract of June 25th, that Mrs. Bott did not sign it, and that Mr. Thacker did not appear to have had authority from Mr. Carroll to sign for him. Later it was said that legal title to three of these lots was in Mrs. Thacker and not in Mr. Thacker.

The court in its instructions told the jury: "The court instructs the jury that the fact that Mrs. Thacker did not sign the contract is immaterial in this case."

It also told the jury: "The court instructs the jury that the fact that Mr. Bott's wife had not signed the contract is immaterial in this suit."

■ These instructions were not objected to and so in part make up the law of this case.

Judge Crump in *C. G. Blake Co.* v. *Smith*, 147 Va. 960, 133 S. E. 685, 691, said:

"The last instruction above transcribed, that drawn by the court, was not objected to by the plaintiff in error, and,

therefore, became the law of the case." *Coopersmith* v. *Mahoney*, 150 Va. 685, 143 S. E. 313; *Southern Ry. Co.* v. *Cohen Weenen & Co.*, 156 Va. 313, 157 S. E. 563.

Mr. Thacker did have authority to sign for Mr. Carroll as is shown by his deposition and so these objections are without merit.

When counsel, later, in August, did examine title to these lots he reported the following defects.

It appears that there is a joint driveway seven feet wide between the Westover avenue lot and one which adjoins it. This driveway was for the benefit of these two lots and had not theretofore been regarded as a burden.

In the chain of title to another lot is a deed from Mrs. Ruth Branch Jones and all of her children. Mrs. Jones, who is sixty-one years old, and her children, took under a will in which the testator said: "I give to Ruth Branch Jones, my lot of land, No. 16, block 15, purchased and paid for to the Westover Company as per deed, see recorded, and at her death to all of her children living." On the thirty-first street lot were two deeds of trust for $250.00 each. This lot was conveyed to the Methodist Church by Ira T. Holt to be used for church purposes and was afterwards sold by the church under ordinary statutory provisions enacted for the sale of church property.

The alleged defect growing out of the testamentary devise to Mrs. Jones was disposed of by the trial court in this instruction: "The court instructs the jury that under the will in evidence Mrs. Jones took a life interest, and her children living at the death of the testator took a fee simple remainder."

The two $250.00 trust deed debts had been paid, and that fact counsel for Mr. Bott knew from an endorsement of record, but this endorsement was not in proper form.

The restrictive provisions in the deed from Ira T. Holt, even if we were to concede that they continue to

operate, could have been cured by a quit claim deed, and he did in fact afterwards execute one. The wide use of automobiles has made private garages in many instances highly desirable so that reservations like this joint roadway are now quite common, but we will deal with it as a burden. As such it could, in all probability, have been cleared away, and in any event good faith required that an opportunity to clear it away should have been given.

The character of these defects now relied upon, though known to Mr. Bott, were not disclosed by him to anyone unless it be his counsel. Mr. Smith says that he heard of them for the first time three or four days before this case was called to trial in the court below.

Mr. Bott did tell his counsel that he desired to repudiate the contract and it is certain that this was his final purpose. Afterwards, Mr. Vivian Page, of counsel for Mr. Bott, saw Mr. Smith who then represented the plaintiff. This is, in part, his evidence as to what then took place:

"Mr. Smith came to my office and we discussed the matter pro and con and I told him Mr. Bott would not go through with the contract because of a number of reasons I cannot tell you just exactly what they were, because all of this was mixed, the title was bad, the property was not in Mrs. Thacker's name, she had not signed the contract and he could not make her go through with any deal, and he at that time said to us that on the day it was to be consummated he was going to make tender in order to make the proposition so that they would be in position to enforce the contract, not for Etheridge and Company, as I understand it, but for Thacker. I told him frankly any number of times that Mr. Bott was not going through with it, and so then he said he was going to make tender to Mr. Bott of the deed. The next day the Bar Association was meeting, and I happened to be over with Mr. Martin at Newport News, at the Chamberlain Hotel, and I got a 'phone message,

when I returned at three o'clock, that Mr. Smith, I think, had been to Mr. Bott's office. I then called Mr. Smith's office. He was out of town, had gone fishing, and I endeavored to locate him several places, and finally he called me at night. The contention over the matter of the deed was, in order to put ourselves in the best advantageous position we could be in, speaking as counsel, that we would offer him a deed from Mr. Bott without Mrs. Bott's signature. We knew he could not make her sign and I knew that he would not take a deed without her signature any more than we would take their deed without Mrs. Thacker's signature. That is what I remember about the case. We discussed it several times with Mr. Smith. He was in our office at least once because I recall seeing him in my office, and he was there also after the first of August. As to any particular time I would not swear to it. If Mr. Smith says he has something in his mind absolutely, I would not deny anything he says because I know him too well."

In passing it may be noted that there is here no reference to the Etheridge representations.

Mr. Smith, as we have seen, states absolutely that he knew nothing about these defects in title now relied upon until after this action was instituted. They are not impressive but independent of their weight it was Mr. Bott's duty to make them known that they might be corrected or at least that an opportunity to correct them might be given.

What has been said about Etheridge's statements as to the physical condition of these properties applies in principle to these defects in title afterwards discovered.

■ In a suit for specific performance of a contract for the sale of real estate where time is not of the essence, it is well settled that a vendor whose title is not perfect will be given a reasonable time to perfect it. Michie's Digest, volume 8, page 1061, where the authorities are collected.

It is true that this is an action at law, but Bott knew

before the date set for final execution of the contract of June 25th, what these objections to title were. He did not disclose them and contented himself with saying that the title was bad. If time for the consummation of a contract can be extended that title may be perfected, then for a stronger reason the vendor should have an opportunity to perfect title when that time has not yet arrived.

It would be a reflection upon the administration of justice to permit a vendee to say to his vendor: "I have found a defect in your title but I will not tell you what it is because you might correct it and deprive me of this defense should you sue upon your contract."

Looking at the substance of things this is the situation here.

■ When we come to the date set for the execution of the contract, still another reason was advanced to defeat it. For the vendors a tender was made, the sufficiency of which is not questioned. It was not refused because of misrepresentations and it was not refused because the title was bad. Mr. Bott was willing to go forward provided the Thackers, on their part, would accept a deed not signed by Mrs. Bott.

From Mr. Smith's evidence this appears:

"A. He (counsel for Mr. Bott) said he understood I had made a tender and, of course, he was going to tender a deed signed by Mr. Bott alone, and I said: 'You need not do that because we will not accept it and I waive formal tender.'

"Q. The only reason given at that time was because Mrs. Bott would not sign a deed, and, of course, you would not take a deed not signed by her?

"A. I never heard of any other reason at that time."

On cross examination this appears in Mr. Page's testimony:

"Q. If he (Mr. Smith) had a letter of that date by which he can refresh his memory, as you said, you knew he is very accurate and correct?

"A. I say if he makes a statement he is positive of, I would not dispute him.

"Q. You just stated that you would not expect him to take a deed without Mr. (*sic*) Bott's signature?

"A. Yes. I might say in explanation that Mr. Bott never said one word about it, but it was simply a proposition to put Mr. Bott in the best legal position he could be in."

As a matter of fact Mrs. Bott had not refused to sign the deed for she had never been asked to sign it although she could not have been made to do so because she was not a party to the original contract of purchase and exchange.

The inevitable inference to be drawn from the face of his proposition was that Mr. Bott was willing to abide by the contract of June 25th, but that his wife was not. Not only is this an inevitable inference, but it is the intended inference. As Mr. Smith puts it: "I never heard of any other reason at that time."

This was a plain waiver of any misrepresentations which had been made to the defendant as to the physical condition of these properties or of any defects in title, assuming that they were at one time sufficient to invalidate the contract.

"Where a party gives a reason for his conduct and decision touching anything involved in the controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is estopped from doing it by a settled principle of law." *Ohio & M. Railway Co.* v. *McCarthy,* 96 U. S. 258, 267, 24 L. Ed. 693; *Oakland, etc., Co.* v. *Wolf Co.* (C. C. A.), 118 Fed. 239; *Goodman* v. *Purnell* (C. C. A.), 187 Fed. 90; *Heckscher* v. *Blanton,* 111 Va. 648, 653, 69 S. E. 1045, 37 L. R. A. (N. S.) 923; *Arwood* v. *Hill's Adm'r,* 135 Va. 235, 243, 117 S. E. 603; *Robinson* v. *Shepherd,* 137 Va. 687, 120 S. E. 265; *Nagle* v. *Syer,* 150 Va. 508, 143 S. E. 690.

From what has been said it follows that the jury's verdict should have been set aside, and this notwithstanding the

fact that the evidence may have warranted it in believing that Etheridge had in fact made misrepresentations and that the titles were as Bott claimed they were.

Since the plaintiff is entitled to recover there is no occasion to consider those assignments of error which deal with instructions.

The amount of the judgment, if there can be a recovery at all, is not in dispute. It is $3,000.00 with interest from August 1, 1928, and under authority of Code, section 6365, judgment must be entered for him in said sum.

The judgment appealed from must be reversed and it is so ordered.

*Reversed.*

PRENTIS, C. J., and EPES, J., dissenting:

However blameworthy the plaintiff's principal, Bott, may have been, it is also true that certain misrepresentations were in fact made, that no complete title to the lane was ever tendered, and that the contract was never executed by the principals. The verdict of the jury and the judgment of the court do not seem to us to be so plainly wrong as to justify us in ignoring them and holding that the plaintiff is clearly entitled to recover commission or brokerage on this frustrated sale. We are constrained, therefore, to dissent.

## UPON REHEARING.

## Richmond

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

CHINN, J., delivered the opinion of the court.

The petition upon which this rehearing was granted

questions the accuracy of the former opinion in this case, upon the ground that in holding that Bott waived the misrepresentations made by plaintiffs representative, Etheridge, the court overlooked the principal facts in reference to the question of waiver, and misapprehended the law applicable thereto.

In view of these assertions, we have made a critical reexamination of the record, and, after further consideration of the evidence and the legal questions involved, are forced to the conclusion that Bott not only waived the misrepresentations in question, but, in fact, did not rely upon them as an inducement to enter into the contract which is the basis of this action.

■ The only misrepresentations alleged in the pleadings are, that Etheridge falsely led Bott to believe that the property he was to take in part payment for the Westover Terrace Apartments was in good condition; that the property was occupied and the tenants had renewed their leases, and that the property was rented for a larger amount than it really was.

It appears, however, from the evidence of Bott's own witnesses and office employees, S. W. Cromwell and Miss Sutton, and that of Bott himself, that *after* Etheridge made the alleged misrepresentations and *before* he signed the contract, Bott inspected the several properties in question in order to satisfy himself in regard to them. Bott testified that when Etheridge submitted the written offer to him, they discussed the proposition in his office, and he then decided to go with Etheridge to look at the property.

"Q. Did he ask you at that time to enter into the written agreement with him?

"A. Yes, he wanted me to sign the contract before. He wanted me to make the deal before I went to see the property, and I told him I would not do that.

"Q. What reasons did you give him for not wanting to do that?

"A. Because I didn't know the condition of the property and the leases on it."

It was testified by Etheridge and another witness who accompanied them on this tour of inspection (which we do not find to have been denied by Bott), that as they went around Bott expressed his opinion as to the value of several of the properties and what it would cost to put them in good tenantable condition. It is true that Bott says he did not see inside several of the apartments because the tenants were not at home, or because he did not care to look at them, and did not interview the tenants he saw as to their leases, but according to his own statement at the trial he found several of the tenancies unoccupied. It was not until after all this was done that Bott signed the contract. It therefore seems manifest that Bott was not relying on what he claims Etheridge told him about the property, but on his own judgment as to its condition and rental value.

In the case of *West End Co.* v. *Claiborne*, 97 Va. 734, 751, 34 S. E. 900, 906, Keith, P., said: "The principle is equally well settled, but somewhat more difficult of application in practice, that a party induced to enter into a contract by misrepresentation must be justified in relying upon it under all the circumstances. If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports, or professes to commence, an investigation. The plainest motives of expediency and

of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled. 2 Pomeroy's Eq. Jur., section 893." *Hawkins & Buford* v. *Edwards*, 117 Va. 316, 84 S. E. 654.

One who alleges fraud must prove the allegation by clear and convincing proof. The charge cannot be sustained by doubtful and uncertain testimony. *Scott* v. *Scott*, 142 Va. 31, 128 S. E. 599; *Meadows* v. *Meadows*, 143 Va. 98, 129 S. E. 354.

But even if it were conceded that the representations were proved as alleged, and that Bott relied, or has the right to rely, upon them under the circumstances, he plainly waived them by his subsequent course of conduct in regard to the entire transaction. As stated in the opinion heretofore handed down, if he intended to repudiate his agreement with the plaintiff in regard to commissions, on the ground of fraud, it was incumbent upon him to act promptly on the discovery of the fraud by bringing home to the plaintiff knowledge of such intention. This he did not do. On the contrary, the undisputed evidence shows that after the execution of the contract Bott employed an attorney (Mr. Ernest Dyer) to examine the titles to the properties he was to take; gave Mr. Smith, attorney for Doctor and Mrs. Thacker, the necessary information to start the examination of his title to the Westover Terrace Apartments, and some time later requested Mr. Smith to have the Thirteenth street property conveyed to a corporation, which request was refused by Smith for the reason that under the contract Bott was to assume the liens thereon. In fact, although the contract was executed on June 25th, neither the plaintiff nor any of the other parties interested received any intimation from Bott that he intended to repudiate the contract on *any* ground until Mr.

Smith was informed by Mr. Dyer on July 28th—a few days before the contract was to be consummated—that "the deal was off, and would not be closed."

The further claim made by Bott that the plaintiff is not entitled to recover his commissions because Etheridge "guaranteed" the title to the Thacker property, and it is defective, as held in the prior opinion, is also without merit for the reason that Bott waived all such defects by offering the purchasers a deed to the Westover Terrace Apartments without his wife's signature. It is argued that while this might constitute a waiver of defects, so far as the Thackers are concerned, it was not a waiver as to the plaintiff.

Whatever else may be said, this action on the part of Bott plainly precludes him from refusing to pay plaintiff the compensation he contracted to pay him, on the ground that the plaintiff had "guaranteed" the titles and they had proved to be subject to defects. Upon the discovery of the alleged defects in the titles, Bott had the right to elect whether he would refuse to perform the contract, or whether he would go through with it. Having chosen the latter course, he is bound by it, both with respect to his obligation to the plaintiff and the performance of his contract with the purchasers.

"A party cannot, either in the course of litigation or in dealings *in pais*, occupy inconsistent positions. Upon that rule election is founded; a man shall not be allowed, in the language of the Scotch law, 'to approbate and reprobate.' And where a man has an election between several inconsistent courses of action, he will be confined to that course which he first adopts; the election, if made with knowledge of the facts, is itself binding, it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position. Bigelow on Estoppel, page 733." *Arwood* v. *Hill's Admr.*, 135 Va. 235, 117 S. E. 603, 606.

█ It is argued that Bott tendered a deed without his wife's signature, not with the purpose of going through with the contract, but because he knew the purchasers would not accept it. This position does not affect the rights of the plaintiff in the premises. The fact is that the purchasers performed their part of the contract of sale by tendering the cash payment and a deed with general warranty of title, signed by Doctor and Mrs. Thacker, subject only to the liens on the property which Bott had agreed to assume. With Bott's motives in tendering a deed without his wife's signature plaintiff had nothing to do. Having produced a purchaser ready, able and willing to buy, even though his right to recover commissions depended upon that contingency, he had done all that could be required of him, provided he was not guilty of fraud or bad faith in procuring the contract. For the reasons stated, Bott cannot defeat recovery on that ground. It is, therefore, clear he is entitled to the compensation provided by his contract with Bott.

█ It is true that under the general rule Bott was entitled to a marketable title to the property he agreed to take from the Thackers, and upon this theory the trial court improperly left the determination of this question to the jury, whereas it was one for the court. Since, however, Bott waived all defects in the title, it is unnecessary for the purposes of this case that this court pass upon that question. We therefore wish to be understood as expressing no opinion upon it.

█ Complaint is made that the trial court misdirected the jury in telling them that "the fact that Mrs. Thacker did not sign the contract is immaterial in this case," and that "the fact that Mr. Bott's wife had not signed the contract is immaterial in this case." According to the view we take of the case both of these instructions were plainly right, for the reason that Mrs. Thacker actually executed

the deed which was tendered on the day fixed for the consummation of the contract, and the fact that Mrs. Bott did not sign the contract did not release Bott from its performance with respect to either the completion of the proposed sale or the payment of the compensation he thereby agreed to pay the plaintiff for his services.

In view of the conclusions expressed, we adhere to the former opinion of this court, in so far as it holds that the plaintiff is entitled to recover the amount sued for, and that the judgment of the trial court should be reversed and final judgment entered here for the plaintiff in error.

*Reversed.*

EPES, J., dissenting.