# Richmond.

## A. COOPERSMITH v. W. F. MAHONEY

### AND

## A. COOPERSMITH v. E. W. RUDD.

May 24, 1928.

1. APPEAL AND ERROR—*Exceptions to the Refusal to Give Instructions Asked by Plaintiff in Error and to the Giving of those Requested by Defendants in Error—Grounds of Exceptions not Presented to the Trial Court—Rule 22 of the Supreme Court of Appeals—Case at Bar.*—In the instant case the giving of improper instructions at the instance of defendants in error, and the refusing of proper instructions offered by the plaintiff in error, were assigned as error. No specific objections to the granting or to the refusing of instructions appear to have been presented to the trial judge, the certificate of the judge merely saying: "The foregoing instruction requested by the plaintiff was denied and the plaintiff excepted." Again: "The foregoing instruction was granted at the request of the defendant and the plaintiff excepted."

   *Held:* That under Rule 22 of the Supreme Court of Appeals, requiring grounds of exception to be presented to the trial court, the appellate court was precluded from considering the objections raised for the first time on appeal in the brief of the plaintiff in error.

2. APPEAL AND ERROR—*Objection that Verdict was without Sufficient Evidence to Support it—Preservation of the Objection—Exceptions, Bill of—Order of Court Showing that Motion to Set Aside the Verdict was Overruled—Code of 1919, Section 6253—Case at Bar.*—In the instant case it was assigned as error that the evidence was not sufficient to warrant a finding for the defendants in error. It was objected that the exceptions to the entering of judgment for defendants in error were not properly perserved and brought to the appellate court by bill of exceptions or certificate from the trial judge, as required by section 6253 of the Code of 1919. While the better practice is to preserve the exception by a certificate or bill of exceptions signed by the judge, where, as in the instant case, the order of the court, which was signed by the judge, showed that the motion to set aside the verdict was made, overruled, and excepted to by counsel, all that the bill or certificate could accomplish, has been done, and the

grounds urged for a reversal of the court's judgment should be considered and disposed of on the merits on appeal.

3.  NEW TRIALS—*Motion to Set Aside the Verdict Because the Evidence was Insufficient to Support it—Exceptions to Instructions not Stating Ground of Objection—Erroneous Instructions Considered as Law of the Case.*—In considering a motion to set aside the verdict because the evidence was insufficient to support the same, the instructions, however erroneous, are to be considered as embodying the law of the case, where the exceptions to the instructions did not state the grounds of objection as required by Rule 22 of the Supreme Court of Appeals, and the appellate court, therefore, is to determine from the record whether or not the jury had before them sufficient evidence to justify the verdict rendered, on the law declared in the instructions which binds them in the consideration of the case.

4.  BILLS, NOTES AND CHECKS—*Fraud or Illegality in Inception—Purchaser of Instrument—Burden of Proof to Show Bona Fides.*—If the maker of a negotiable instrument or party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it *bona fide* for value in the usual course of business while current, and under circumstances which create no presumption that he knew of the facts which impeach its validity.

5.  FRAUD AND DECEIT—*Relief Refused to Known Participants.*—The law withholds its aid from all known participants in deceit, fraud, or crime.

6.  ACTIONS—*Negligence—Relief to those Guilty of Carelessness or Negligence.*—The law is reluctant in extending relief to those who by their carelessness, neglect or abandonment of common prudence make it possible, even easy, for the public to suffer bacause of their negligence.

7.  BILLS, NOTES AND CHECKS—*Diligence Required of Makers of Negotiable Instruments—Diligence Required of Purchasers of Negotiable Instruments.*—Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than those who purchase such paper in due course of commercial transactions.

8.  BILLS, NOTES AND CHECKS—*Fraud in Inception—Action by Holder—Knowledge of Fraud by Holder—Questions of Law and Fact.*—In an action by a holder of a negotiable instrument, where defendant shows fraud in inception of the instrument, thus throwing upon plaintiff the burden of showing that he is a holder in due course, the credibility of the testimony of witnesses whose connection with

the transaction or the parties is suspicious, is for the jury, although undisputed.

9. BILLS, NOTES AND CHECKS—*Fraud in Inception—Knowledge by Holder of Fraud—Negligence of Holder—Suspicious Circumstances.*—In an action by a holder of a negotiable instrument, if defendant can show fraud in inception of the instrument and that plaintiff had knowledge of fraud, defendant will not be liable to plaintiff. But if plaintiff merely acted negligently or was affected by suspicious circumstances in taking the notes, in the absence of proof of facts amounting to fraud on his part, this is not sufficient to defeat his right of action.

10. EVIDENCE—*Objections to Evidence—Discussion of the Character of the Evidence in the Presence of the Jury—Case at Bar.*—In the instant case there was a prolonged and determined effort by counsel of defendants to get before the jury a certain letter. In the colloquy which resulted between counsel and the court in the presence of the jury, an interpretation was placed on the letter by defendants' counsel and stressed in the hearing of the jury, which reflected upon the integrity of the plaintiff. Counsel for defendants making the statement: "We think this man has committed fraud." The jury was finally sent from the room and the letter made a part of the record, though properly excluded from the jury.

*Held:* That the entire incident was highly prejudicial to the plaintiff.

11. EVIDENCE—*Objections to Evidence—Discussion of the Character of the Evidence in the Presence of the Jury.*—When the admission of evidence has been objected to by opposing counsel, its character should not be discussed in the presence of the jury, and where a litigant has benefitted as a result thereof he should not be permitted to enjoy the advantages of a favorable verdict, for the reason that the other party has not had a fair trial.

12. BILLS, NOTES AND CHECKS—*Fraud in Inception—Action by Holder—Evidence Insufficient to Support Verdict for Defendants—Case at Bar.*— The instant case was an action by the holder of certain acceptances against the makers. The makers plead that the acceptances were fraudulently procured by plaintiff's vendor and that plaintiff knew of the fraud. The verdict and judgment were in favor of the defendants. The acceptances were purchased by the plaintiff at a discount approximating 25%, along with some twenty others given by persons or firms in various localities. There was nothing suspicious in the manner in which plaintiff and his vendor began or conducted the negotiations in regard to the purchase of the paper. The evidence of plaintiff was unequivocal and uncontradicted and showed that he took every reasonable precaution. Plaintiff found by investigation that the firms executing the acceptances were of good standing, morally and financially. Had plaintiff before purchasing the paper communicated with the defendants, there was no

reason to assume that the situation would have been changed, as defendants at the time the acceptances were purchased were not themselves aware of the fraud.

*Held:* That the judgment should be set aside and judgment entered for the plaintiff.

Error to a judgment of the Law and Equity Court of the city of Richmond, Part II, in a proceeding by motion for a judgment for money. Judgment for defendants. Plaintiff assigns error.

*Reversed and judgments entered.*

The opinion states the case.

*Cary Ellis Stern & Chumbley*, for the plaintiff in error.

*David Meade White*, for the defendants in error.

McLEMORE, J., delivered the opinion of the court.

These cases, in which there are the same questions involved, and in which the same evidence was introduced, are here upon writs of error to the judgment entered against the plaintiff in the Law and Equity Court of the city of Richmond, Part II, and will be considered as though they had been consolidated.

The plaintiff, A. Coopersmith, treasurer of City Corrugated Paper Products Company, Incorporated, of New York, and also an investor in commercial paper when attractive propositions were offered, purchased from Otis Oil Burner Corporation of New York certain acceptances (six in number) of the defendants, Mahoney and Rudd, plumbers and heaters of Richmond, aggregating $1,374.00 for which he paid $1,031.00.

Payment on these notes or acceptances was demanded of the obligors as they became due.  The first note due by each defendant was paid, and all of the others refused, whereupon actions were brought to recover judgments against the makers of the notes, Mahoney and Rudd.

Defendants plead the general issue and also filed special pleas alleging that the acceptances were fraudulently procured by the Otis Oil Burner Corporation and that plaintiff knew of these facts.  The issues thus raised were submitted to a jury and verdicts returned in favor of defendants, and judgments entered thereon.

The errors assigned are:  1st, Improper instructions to the jury.  2nd, That "the evidence is not sufficient, as introduced, to warrant a finding for the defendant under the pleadings."

There were a number of instructions offered by the plaintiff, most of which were refused, and there were others offered and given at the instance of the defendants.  The refusal to give those asked by the plaintiff, and the giving of those requested by the defendants, were excepted to by plaintiff's counsel, but no grounds of exception were presented to the court as required by Rule 22 of the Supreme Court of Appeals.

The certificate of the judge of the trial court says: "The foregoing instruction requested by the plaintiff was denied and the plaintiff excepted."  Again:  "The foregoing instruction was granted at the request of the defendant and the plaintiff excepted."

The observations of Campbell, J., in *Kelly* v. *Schneller*, 148 Va. 573, 139 S. E. page 275, are pertinent here:

"No objections are set forth in the certificate of the trial judge.  Nowhere does it appear in the record that the attention of the trial court was called to the alleged errors in the instructions.  All that is said on the sub-

ject of objections to the instructions is found in the following certificate."

[1] No specific objections to the granting or to the refusing of instructions appear to have been presented to the trial judge, and we are, therefore, precluded from considering the objections raised, for the first time, in the brief of the plaintiff. Had the objections now being urged been suggested to the learned trial judge, the errors complained of might have been there corrected. *Kelly* v. *Schneller, supra; Levine* v. *Levine,* 144 Va. 330, 132 S. E. 320; *Universal Motor Co., Inc.* v. *Snow,* 149 Va. 690, 140 S. E. 653.

The second ground for asking the reversal of the judgments is that the evidence did not justify the jury in finding for the defendants. This in effect amounts. to a demurrer to the evidence.

[2] Upon the threshold of a consideration of this question, we are met with the objection that exceptions to the entering of judgment for the defendants was not properly preserved and brought to this court by bill of exceptions or certificate from the trial judge (Va. Code, section 6253), and is therefore not before the court.

The court order entered October 21, 1926, overruling the motion to set aside the verdict, is as follows:

"This day came again the parties, by counsel, and the motion heretofore made by the plaintiff to set aside the verdict of the jury herein and grant him a new trial having been fully heard, the court doth overrule the same. It is, therefore, considered by the court that the plaintiff take nothing by his suit, etc., but that the defendant go thereof without day and recover against the plaintiff his costs by him about his defense in this behalf expended.

"To which ruling of the court the plaintiff, by counsel, excepted."

While the better practice is to preserve the exception by a certificate or bill of exceptions signed by the judge, sections 6252 and 6253, Va. Code; Burk's pleading and Practice, page 523, where, as here, the order of the court, which is signed by the judge, shows the motion was made, overruled, and excepted to by counsel, all that the bill or certificate could accomplish, has been done, and we are of the opinion, therefore, that the grounds urged for a reversal of the court's judgment should be considered and disposed of on the merits. *Trust Company of Norfolk* v. *Commonwealth* (Va., March 1, 1928), 141 S. E. 826.

[3] In considering the motion to set aside the verdict because the evidence is insufficient to support same, it must be remembered that the instructions, however erroneous, are to be considered as embodying the law of the case (exceptions thereto not having been effectively preserved), and we are therefore to determine from the record whether or not the jury had before them sufficient evidence to justify the verdict rendered, the law being declared in the instructions which binds them in the consideration of the case?

[4] The principles of law applicable to cases of this character are well settled, and well stated in *Piedmont Bank* v. *Hatcher*, 94 Va. 229, 26 S. E. 505. It is there said: "If the maker or party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it *bona fide* for value in the usual course of business while current, and under circumstances

which created no presumption that he knew of the facts which impeach its validity."

The application of the principles to the facts of the particular case often presents difficulties. The importance of the question as it affects the ready transfer and negotiability of commercial paper, the basis of the business of the world, and without which industry would stagnate and industrial progress cease, is of transcendant importance.

[5, 6] The law withholds its aid from all known participants in deceit, fraud, crime; it is also reluctant in extending relief to those who by their carelessness, neglect or abandonment of common prudence make it possible, even easy, for the public to suffer because of their negligence.

[7] "Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than those who purchase such paper in due course of commercial transactions." *Fleshman* v. *Bibb*, 118 Va. 582, 587, 88 S. E. 64, 66.

The evidence leaves us without doubts as to the fraud in the procurement of the acceptances sued on, and as between the defendants and Otis Oil Burner Corporation there would be no difficulty in allowing the verdict of the jury and judgment of the court in favor of Rudd and Mahoney to stand affirmed. The cases before us involve different principles of law, the doctrine being that where there is fraud or illegality in the inception, the holder of the security must show that he obtained it *bona fide*, in the usual course of business, before maturity, and under circumstances which create no presumption that he knew of the facts which impeached its validity. *Duncan* v. *Carson*, 127 Va. 306, 321, 103 S. E. 665, 670, 105 S. E. 62; Virginia Code, section 5621.

The material evidence on this point is confined to two witnesses, the plaintiff in his own behalf, and Frankel, introduced by the defendants.

The Virginia decisions in discussing the question, upon a cursory reading, are confusing in the conclusions reached in some of the cases, notably in *Fleshman* v. *Bibb*, 118 Va. 582, 587, 88 S. E. 64; *Duncan* v. *Carson*, 127 Va. 306, 103 S. E. 685, 105 S. E. 62; *Crum* v. *Hanna*, 140 Va. 366, 125 S. E. 219; and *Elkhart State Bank* v. *Bristol Broom Company*, 143 Va. 1, 7, 129 S. E. 371. We believe, however, that the differences are more apparent than real, and are the result of a state of facts in the case of *Duncan* v. *Carson* and *Elkhart State Bank* v. *Bristol Broom Company*, *supra*, which justified the statement by Burks, J., in both opinions, that "the credibility of this testimony, though undisputed, was for the jury."

In the *Carson Case*, the two witnesses testifying were Marion Allen, manager sales department of Carson Manufacturing Company and in absolute control of same, and J. P. Carson, president of said company. Occupying these positions, Allen sold to E. P. Duncan stock in the company of the par value of $5,000.00, taking Duncan's note therefor under such circumstances and misrepresentations as to render the transaction as between Allen, for the company, and Duncan, fraudulent in its inception. Allen being unable to realize the cash on Duncan's note, agreed with J. P. Carson for the purchase of the same in consideration of 250 shares of the company's stock which was issued and signed by Carson, president of the company. Carson it will be remembered, is suing Duncan to recover on the said note. Allen and Carson had adjoining offices in the company's suite of rooms in Richmond.

Thus situated, Allen testified that he did not think he told Carson of the circumstances in connection with the inception of the $5,000.00 note sued on, and Carson also denied knowledge thereof.

Burks, J., in discussing the inferences that might be drawn from the facts, on demurrer to the evidence said:

"As Allen was the general sales manager of the stock of the company and had no superior in the department of sales, the jury might well have believed that the sale to Duncan on time was binding on the company. If so, Duncan had the right to set up the defense growing out of the repurchasing agreement. If the company accepted the benefit of the contract, it was also bound by the representations of its agent, although unauthorized. *Owens* v. *Boyd Land Co.*, 95 Va. 560, 28 S. E. 950.

"It was also the duty of Carson, as president of the company, when he signed the certificate of stock to Duncan, to know that the conditions had been complied with which authorized the issue of the stock, and if he failed to do so, he was negligent. If Allen had no authority to sell except for cash, then when he found he could not perfect the transaction he should have disclosed the facts to the officers of the company, notified Duncan, and asked a return of the stock upon the surrender of his notes. In selling the stock he was acting as agent for the company, and he, of course, knew if the notes were turned in to the company, and the company was the holder of them, Duncan could set up in a suit brought by the company the breach of the collateral agreement set forth in the special plea. When the stock certificate was issued to Duncan, the company had the right to demand the surrender of the notes given by Duncan for the stock, and the jury might well have believed that the transaction between

Allen and Carson stood on no higher footing than if the notes of Duncan had been transferred to Carson by the company. If the jury might have so found, the trial court, on the demurrer to the evidence, should have so decided. If the notes had been transferred to Carson by the company, he could not have set up the defense of a *bona fide* holder in due course, as he was the president of the company. *McCarty* v. *Kepreta*, 24 N. D. 395, 139 N. W. 992, 48 L. R. A. (N. S.) 76, Ann. Cas. 1915A, 834; *Caraker* v. *Hix* [*Hicks*], 9 Ga. App. 493, 71 S. E. 765; *Hardin* v. *Dale*, 45 Okla. 694, 146 Pac. 717, L. R. A. 1915A, 1099; Morse on Banks and Banking, section 137.

"Upon the evidence in this cause, the jury might have well believed that Carson did not obtain the notes 'under circumstances which created no presumption that he knew the facts which impeached their validity,' and that he had not borne the burden thrown upon him by the statute.

"There was a verdict in favor of Duncan against Carson for $562.50, in the event the demurrer to the evidence should be overruled, but there was no evidence to sustain it and it will be set aside. Upon entry of the final judgment in this court, Carson, the defendant in error, will be entitled to demand of and recover from Duncan, the plaintiff in error, possession of the certificate for 250 shares of stock of the Carson Manufacturing Company." *Duncan* v. *Carson*, 127 Va. 306, 324-326, 103 S. E. 665, 671.

[8] It seems clear that testimony coming from such sources and under such circumstances, not only might have, but should have, been rejected by the jury, and thus the statement of the law as applied to this case, that "the credibility of this testimony, though undisputed, was for the jury," is entirely justified. Indeed

it may fairly be said that such evidence amounts to self refutation, and is therefore not "undisputed testimony."

In the *Elkhart Case*, that bank being an intervenor, it is said: " 'As shown, fraud in the inception is both proven and admitted in this case. This threw upon intervener the burden of showing that it was in fact a holder in due course as defined by law. (Va. Code, section 5614.) This it attempted in a way to do by the testimony of its cashier, Williams, and that of B. F. Weymer, a participant in the fraud. "The credibility of this testimony, though undisputed, was for the jury. *Joy v. Diefendorf*, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484." *Duncan v. Carson*, 127 Va. 306, 322, 103 S. E. 665, 670.' " *Elkhart State Bank* v. *Bristol Broom Co.*, 143 Va. 1, 7, 129 S. E. 371, 373.

The plaintiff bank undertook to carry the burden thus placed upon it, "but the circumstances attending the negotiation of the draft left the *bona fides* of the transaction sufficiently in doubt to carry the question to the jury which found against the bank."

The money represented by the draft being held by Dominion National Bank of Bristol, and Elkhart State Bank was claiming the same for its customer, Weymer Warehouse Company, the bank being the mere nominal plaintiff. Here too the witnesses are the cashier of the plaintiff bank and Weymer, a participant in the fraud, their own testimony being such as to render doubtful the good faith of the transaction, as well as strongly tending to show that the plaintiff was not a holder for value at all.

Turning to the case in judgment, and we find nothing in the record to show that Coopersmith did any act to bring in question the *bona fides* of the transaction, unless it can be said that the discount at which the

paper was bought was so great as to cast upon him the presumption of bad faith.

The two motions were brought to recover about $490.00 each and the acceptances which were the basis of the actions were purchased at a discount approximating 25%. These acceptances were purchased along with some twenty others given by persons or firms in various localities where the agents had been able to place contracts for the sale of oil burners.

There is nothing unusual or suspicious in the manner in which plaintiff and Otis Oil Burner Corporation begun or conducted the negotiations eventuating in the purchase of the paper. The evidence of Coopersmith is unequivocal and uncontradicted on any material point, and shows that he took every reasonable precaution to avoid future trouble, before consummating the purchase. He found by investigation that the firms executing the acceptances were of good standing, morally and financially, and that the books of the Otis Oil Burner Corporation showed it to be a successful going concern.

The only witness introduced by the defendant was Justus Frankel, a public accountant of thirty years' experience, and although a witness for the defendant, he supported in every material detail the testimony of the plaintiff. Had Coopersmith done the one other thing left, before purchasing the paper, namely: communicated with defendants, there is no reason to assume the situation would have been changed.

These acceptances were purchased on September 30, 1925, and as late as thirty days thereafter, defendants, who paid one acceptance each, were writing the oil burner corporation to know when they were going to send salesmen to Richmond to set-up sample burners, and begin a canvass of their customers. Up to this time,

therefore, defendants were not themselves aware of the fraud which it was afterwards claimed (and we think successfully) had poisoned the securities at the time of issue.

The cases in judgment seem to us to be controlled by *Fleshman* v. *Bibb* and *Crum* v. *Hanna, supra,* in the first of which (the facts being strikingly similar to those in the instant case), Judge Prentis says:

"The notes were sold the next day after their execution at a discount of twenty *per cent.;* they were made by parties who were perfectly solvent; they were sold, along with certain other notes of the same date and amount to the same purchasers; the company was getting rid of all these notes preparatory to leaving the county at once; and the officer of the company who made the sale to Bibb, though introduced to him by an agent whom Bibb knew well, was himself a stranger to Bibb. It is claimed that these facts, viewed with the further fact that Bibb knew the nature of the consideration for which the notes were given, were sufficient to put him upon inquiry which should have led him to a discovery of the alleged fraud and failure of consideration. An entirely sufficient answer to this claim is found in the fact that Fleshman himself testifies, in effect, that he did not suspect any fraud or failure of consideration at the time Bibb bought the notes. An inquiry addressed to the maker, therefore, would not have informed Bibb of any fraud.

" 'Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than those who purchase such paper in due course of commercial transactions.' *Vaughan [Vaughn]* v. *Johnson,* 20 Idaho 669, 119 Pac. 879, 37 L. R. A. (N. S.) 816, 818.

[9] "In our view of the evidence, if the defendant in

error can be said to have acted negligently or to have been affected by suspicious circumstances in taking the notes, this certainly is the most that can be charged against him, and this, in the absence of proof of facts amounting to fraud on his part, is not sufficient to defeat his right of action. *City National Bank* v. *Hundley*, 112 Va. 51, 54, 70 S. E. 494; *Frank & Alder* v. *Lilienfield*, 33 Gratt. (74 Va.) 377, 389-90; 1 Dan. Neg. Inst. (5th ed.), sections 774, 775, 796; 3 Ruling Case Law, section 278."

[10] There was a prolonged and determined effort on the part of defendants' counsel to get before the jury a letter written by B. M. Ainsworth, general manager of oil burner corporation, to defendants, and in the colloquy which resulted between counsel and the court *in the presence of the jury*, an interpretation was placed on the letter by defendants' counsel and stressed in the hearing of the jury, which reflected upon the integrity of the plaintiff. Counsel for defendants making the statement: "We think this man has committed fraud."

The jury was finally sent from the room and the letter made a part of the record, though properly excluded from the jury. This entire incident was highly prejudicial to the plaintiff, and may be an explanation of why a verdict was returned by the jury which this court feels constrained to set aside.

[11] When the admission of evidence has been objected to by opposing counsel, its character should not be discussed in the presence of the jury, and where a litigant has benefited as a result thereof he should not be permitted to enjoy the advantages of a favorable verdict, for the reason that the other party has not had a fair trial. *Norfolk So. R. R. Co.* v. *Tomlinson*, 116 Va. 165, 81 S. E. 89; *N. & W. Ry. Co.* v. *Allen*, 122 Va. 615, 95 S. E. 406; *A. C. L. Realty Co.* v. *Robertson's*

*Ex'or*, 135 Va. 247, 116 S. E. 476; *Holden* v. *Pa. R. R. Co.*, 169 Pa. 1, 32 Atl. 103.

[12] We are of the opinion that the right of the case is with the plaintiff, and the judgments will be set aside and judgments entered here in his favor for the amounts claimed in the pleadings in the court below.

*Reversed and judgments entered.*