# Richmond.

SOUTHERN RAILWAY COMPANY v. COHEN WEENEN & CO.

March 19, 1931.

Present, Campbell, Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Thomas B. Gay, Wirt P. Marks, Jr.,* and *James H. Corbitt,* for the plaintiff in error.

*Baird, White & Lanning,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a proceeding by motion for judgment instituted in the Circuit Court of the city of Norfolk, Virginia, by the defendant in error, Cohen Weenen & Co., which sues for the use and benefit of the Northern Assurance Company, Limited, its assignee and subrogee, hereinafter called the plaintiff, as it was the plaintiff below, against the plaintiff in error, Southern Railway Company, hereinafter called the defendant, as it was the defendant below, in which proceeding a judgment was entered by which it was adjudged that the plaintiff recover against the defendant the sum of twenty-two hundred and fifty dollars, with interest thereon from the 16th day of June, 1925, until paid, and its costs in the case expended. The writ of error allowed is from that judgment.

This statement of facts is taken from the brief filed on behalf of railway company:

"On the 11th day of June, 1925, 115 hogsheads of leaf tobacco, containing 133,178 pounds, were delivered to the Southern Railway Company, at Danville, Virginia, by Dibrell Brothers, Inc., consigned to 'International Mercantile Marine Co., c/o Virginia Forwarding Corp'n,' Norfolk, Virginia, 'For Export,' 'Booked for the SS. "Novian" contract 2893 sailing

June 20, 1925;' for which shipment a Uniform Domestic Straight Bill of Lading, dated June 11, 1925, was issued and delivered to Dibrell Brothers, Inc.

"On the 15th day of June, 1925, the defendant mailed notice to the International Mercantile Marine Co., c/o Virginia Forwarding Corporation, showing that the goods had arrived at Norfolk on that day.

"On the afternoon of the following day, that is, the 16th day of June, 1925, while the tobacco was in the warehouse of the railway company at Pinner's Point, Norfolk, Virginia, an unusual, extraordinary and unexpected windstorm burst upon the warehouse and blew the roof from the end of the warehouse next towards the Elizabeth river. The windstorm was accompanied by a downpour of rain, which fell upon the hogsheads of tobacco and wet them to some extent. The rain lasted only a short time, and immediately after the rain the railway company caused some holes to be bored in the floor to let the water run off and caused the tobacco to be moved from that part of the warehouse which had been unroofed and stored in a portion of the warehouse that was in perfect condition."

It is conceded that the judgment represents the amount of damage suffered. No complaint was made of the form of action or of the plaintiff's right to sue.

After verdict the defendant, by counsel, moved the court to set that finding aside as contrary to the law and the evidence, and at the same time set out those matters which it relied upon to sustain that motion. They are—

First, that the damage was occasioned by an "act of God."

Second, that the railroad had no facilities for uncoopering hogsheads of tobacco, or for drying the tobacco out, and that the tobacco was *en route* for London and might be called for any day, and had to be held to await that call.

Third, that the carrier had no means of knowing that the

rain had penetrated through the wooden casings to the tobacco.

Fourth, that it called in an agent of the shipper for advice, showed the tobacco to him, told him what had occurred, and that he made no request for uncoopering.

Fifth, it was said that if the tobacco had been uncoopered and found to be undamaged, the railroad would have been liable; and in conclusion it was said that in any event the cost which would have followed uncoopering and redrying should have been deducted from the gross damage suffered.

At the trial two instructions were given. They are—

"A. The defense in this case is that the damage which it has been agreed the plaintiff suffered was caused by an act of God. The burden of proof is upon the defendant to show the damage was so caused, and no loss can be considered due to an act of God unless it is brought about without the intervention of any human agency whatsoever. Even if an act of God occurred it was still the duty of the defendant to use due and reasonable diligence to save the goods intrusted to it, and if the jury believe that the defendant failed to perform this duty and so occasioned the plaintiff a loss it is liable therefor."

"B. The court instructs the jury if they believe from the evidence that the roof of the warehouse was blown off by an unusual, extraordinary and unexpected storm of wind, followed by a downpour of rain which wet the tobacco in question and caused the damage, then the defendant company would not be liable for damages and you should find your verdict for the defendant, provided you should believe from the evidence that after the tobacco had been subject to rain, the defendant used such care and diligence as a reasonably prudent person would have taken to care for the tobacco."

No exceptions were taken, and so they are the law of this case so far as they purport to speak.

Judge Crump, in *C. G. Blake Co.* v. *Smith,* 147 Va. 960, 133 S. E. 685, 691, said: "The last instruction above tran-

scribed, that drawn by the court, was not objected to by the plaintiff in error, and, therefore, became the law of the case."

In Michie's New Digest, Vol. 1, p. 399, is this statement supported by many citations: "No exceptions having been taken to the instructions, neither party will be allowed to question in the Court of Appeals the correctness of the law laid down by the court as applicable to the evidence in the cause."

See also *Coopersmith* v. *Mahoney,* 150 Va. 685, 143 S. E. 313, and Rule XXII of the rules of this court.

No instructions were refused, and so this phase of this case is no longer open for discussion.

Was this tobacco damaged by "an act of God?"

" 'An act of God,' as the term is known to the law, is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected." *Ellerson Floral Co.* v. *C. & O. Ry. Co.,* 149 Va. 810, 141 S. E. 834, 835.

It does not have to be unprecedented. A building destroyed by an earthquake would be a building destroyed by an act of God. Should it be rebuilt and again destroyed, the second shock would be as much an act of God as the first, but it would not have been unprecedented. If it could not have been anticipated, or expected, under normal conditions, that is sufficient. *Herring* v. *Chesapeake & W. R. Co.,* 101 Va. 778, 45 S. E. 322; *City of Richmond* v. *Cheatwood,* 130 Va. 76, 84, 107 S. E. 830; *Gleason* v. *Virginia Midland R. Co.,* 140 U. S. 435, 11 S. Ct. 859, 35 L. Ed. 458; 4 R. C. L. "Carriers," section 186.

This tobacco was stored in a well-built warehouse, one which could reasonably have been expected to afford ample protection.

Charles H. Richardson was meteorologist of the local weather bureau. On the date of the storm he made this entry: "Fair and warm, followed during the early afternoon by a moderately severe thunderstorm and an unusually heavy squall. Thunder was first heard at 2:04, the storm moving from the

northwest. Last thunder heard 4:50 P. M. The squall began at 2:13 P. M., ending at 2:24 P. M., attaining a maximum velocity of seventy miles from the northwest at 2:17 P. M., and an extreme of eighty-six miles began about 2:20 P. M. Many trees and telephone wires were blown down. Several plate glass windows smashed and the roof of a warehouse at Pinner's Point blown off. Several persons were injured by flying glass."

This witness also said: "The highest wind that we ever had in Norfolk is seventy-six miles an hour with an extreme of one hundred and five. On that day it was seventy miles with an extreme of eighty-six miles."

O. R. Sweet, a boat master of the Southern Railway, said: "I am not familiar with a tornado, but I would say·if there ever was a tornado that was one. It was certainly a twister at that point. I would not say what it was at Cape Henry, but at Pier 4 I would class it as a twister."

█ If this were the whole story, we might well hold the storm of June 16, 1925, to have been of such unusual intensity that it could not reasonably have been anticipated, and that the defendant is not liable for damages occasioned entirely by it. The sting, however, does not lie in this storm but in those things which were done and not done when it had passed.

For a brief period of time it was accompanied by a driving rain, which not only wet, at least superficially, goods stored in the unroofed section of this pier, but was sufficient in volume to flood the floor and make it necessary to bore auger holes for drainage.

█ Mr. William H. Holmes was called in as representative of the shipper. Some question is raised as to his authority, but for the purposes of this case we will assume it to have been ample. In such a state of facts, the defendant, upon full disclosure, would have been justified in following this agent's direction. He said: "My recollection is that as they turned them (hogsheads) over, I didn't see evidence of water dam-

age on the outside, so I stated to them: 'I can't tell, gentlemen, about this; the tobacco may have been damaged or may not have been damaged, but, from the outside and from your telling me that a very little rain fell on it, I doubt very much whether it is hurt, but I cannot take the responsibility."

This agent expressly declined to assume responsibility, and the railway was derelict in not disclosing to him frankly the situation. It does not appear that he was told that the rain fell heavily for a short time and in sufficient quantities to collect in pools upon the floor. This conference, therefore, in no wise relieved the railway from responsibility.

The court properly told the jury that it was the duty of the defendant to use reasonable diligence after the storm, that the shipper might be protected from loss or its damage minimized. That is good law, and even if it were not, it is the law of this case, for the court so told the jury in an instruction nowhere challenged.

▆ H. S. Smith is in charge of operations within the warehouses of Hiden Storage and Forwarding Company of Newport News, one of the largest shippers of tobacco in America, and has had large experience in redrying tobacco damaged by rain. His evidence is that according to custom, when hogsheads so damaged are received, the railroad company is notified. If the damage is superficial, it can be remedied by removing the casing that the tobacco may be exposed to the air for two or three days, when it can be recased. If this is done, the damage is of no practical moment.

Here the damage was superficial. Out of this entire shipment it amounted to only $2,250.00. This tobacco should have been uncased and no valid reason has been advanced to excuse the railroad from taking this simple precaution. No complicated machinery was necessary. The railroad should not be heard to say that it had no facilities for such work.

▆ Again, it is said that had this tobacco been uncoopered and found to be undamaged, the defendant might have been

liable for so handling it. Courts do not in every instance mete out exact justice, but it is assuming a good deal to assume that any court would have held this defendant liable in damages because of any reasonable delay caused by inspection of this tobacco in an effort to save the shipper from loss.

It is earnestly insisted that the defendant should, in any event, be given credit for such expenditures as a redrying would have necessitated.

In the first place, it cannot claim credit for something it never did. In the second place, such a claim would be in the nature of an offset to be established by him who undertakes to set it up. He who does his duty should not be penalized. Had the railway gone to the expense of redrying, manifestly costs so incurred would be within its knowledge and on it would have rested the burden of proof. The fact that it did less than its duty cannot shift this burden.

We have considered those issues raised in the trial court, which it may be said in passing are the same issues set up in the petition for a writ of error. Other and new matters were urged in argument, but they cannot be considered. Rule XXII of this court; *Heldreth* v. *Moore,* 153 Va. 156, 149 S. E. 473; *Hodge* v. *Winchester,* 153 Va. 904, 150 S. E. 392; *McElroy* v. *Commonwealth,* 153 Va. 877, 149 S. E. 481; *Kercher's Admr.* v. *Richmond F. & P. R. Co.,* 150 Va. 115, 142 S. E. 393, 395; *Kenney* v. *Commonwealth,* 147 Va. 690, 137 S. E. 478, 482.

This judgment, upon the record, is plainly right and is affirmed.

*Affirmed.*